ULMAN et al. v. RITTER.

(Circuit Court, D. West Virginia. March 12, 1896.)

1. VIOLATION OF INJUNCTION—ACTUAL NOTICE—CONTEMPT.
    Actual notice of a perfected injunction is binding on the party enjoined, before actual service, and disregard of it constitutes contempt of court.

2. SAME—ADVICE OF COUNSEL.
    The fact that the defendant's counsel advised him that an injunction was not binding on him until service of the same does·not relieve him of the contempt, but may be considered by the court as a matter of mitigation, in fixing the punishment.

3. INJUNCTION—PREVENTION OF WASTE PENDING LITIGATION.
    A court of equity will restrain the commission of waste pending litigation, and, when it is sought to protect timber standing on land in controversy, the court will preserve the status quo of the land until the .end of litigation.

4. SAME—MODIFICATION.
    A modification of an injunction will be generally refused when the order of modification would change the status quo of the property in litigation.

Rule against William L. Ritter to show cause why he should not be punished for contempt in violating an injunction. ·

James H. Ferguson and Couch, Flournoy & Price, for complainants.

Brown, Jackson & Knight and W. P. Rucker, for defendant.

JACKSON, District Judge. On the 22d day of July, last, Ulman & Iaeger presented their bill to me, at chambers,·praying for an injunction to restrain the Elkhorn & Sandy River Land Trust from cutting and removing timber from the lands set out and de· scribed in the bill, and claimed by complainants. On the same day the injunction was allowed as prayed for; restraining the defendants, their agents and servants, from the further cutting and removing of timber from the land claimed by complainants, upon their entering into bond, with good security, to pay all damages and costs awarded against them in the event of its dissolution. The bond required was given, and notice of the injunction was served on the defendants on the 22d, 24th, and 26th days of August, 1895. To this bill the defendant Ritter was not made a party. Subsequently, on the 30th day of December, the same plaintiffs filed another bill against William L. Ritter, the defendant in this action, who claims title to the timber on 3,000 acres of land purchased from the Elkhorn & Sandy River Land Trust, the defendants in the first bill referred to in these proceedings, which land is claimed by the plaintiffs, and for recovery of which they have instituted actions of ejectment against the defendants. The usual order was allowed, restraining the defendant Ritter from cutting and removing timber from the disputed premises. Upon the 28th day of January, last, counsel for the plaintiffs moved the court for a rule against the defendant Ritter, requiring him to appear and show cause why he should not be fined and attached for the violation of the order of injunction, and filed a number of affidavits in support of said motion. The rule was awarded, whereupon the defendant,

by his counsel, appeared, waiving service of process, and pleaded not guilty, filing at the same time his answer denying the allegation that he had violated the injunction. Upon this state of the pleadings, evidence was introduced both in support of the motion to make the rule absolute, as well as to discharge the defendant.

From the evidence I find that the defendant entered into a written contract with the Elkhorn & Sandy River Land Trust on the 31st day of July, 1894, whereby he purchased, and became the claimant of, the timber on the 3,000 acres of land claimed by the plaintiffs; that, both prior to and shortly after the date of the contract, he was engaged in the cutting and removing of the timber from the disputed land. It also appears that there was more or less discussion and talk among the people of the county, and in the neighborhood of defendant's operations, as to the title of the lands from which the timber has been taken. It also appears that Iaeger had previously published and continued a notice, in a newspaper printed in the county, forbidding the cutting and removing of timber from his lands, and had also served a written notice on the defendant to the same effect, which should have had the effect of not only putting the defendant, but the public in general, upon inquiry as to his title to the lands, which was duly recorded as provided by law. It further appears that actions of ejectment have been brought by Iaeger against the Elkhorn & Sandy River Land Trust, under whom the defendant Ritter claimed. In this connection it is to be observed that these lands are chiefly, if not altogether, in a state of nature, mostly unoccupied, and known as "timber lands," and subject to the incursive depredations of parties who have little or no respect for the legal rights of the rightful owner. It is a well-known fact that the demand for timber lands in this state, within the past few years, has greatly increased, which fact has stimulated the grasping desire of dealers in them to such an extent as often boldly to appropriate what does not legally belong to them. I think I may say, without fear of successful contradiction, that this condition of things is the result of inconsiderate legislation, which has been the fruitful source of much litigation. The sales of lands, both by the sheriffs and the school commissioners, for taxes, are nearly always irregular, and their action has given rise to much litigation. It is to be greatly regretted that so many sales by the school commissioners have been attacked for fraud, and in some instances with very strong grounds on which to base the charge. It might possibly be wise legislative action if our legislature would ascertain in some way what amount of money is realized from the sale of lands by school commissioners, and what amount of funds so realized is turned into the treasury of the state, and whether any of our school commissioners, who hold the relation of public officers to our state, are guilty of speculation, either directly or indirectly, by purchase in the lands they sell.

I have departed to some extent from the consideration of the facts bearing directly on the controversy in this case, for the reason that the lands in controversy have more or less a history of the same character; hence this litigation.

Before I discuss the facts pertinent to the issue in this cause, let us determine what the law is, governing the action of courts in cases of this character. The first position of the defendant is that he was not bound to respect the injunction until he was duly served with a copy of the order, and that he was so advised by his counsel. This position is not well taken, but, even if it were, the proof in this case clearly establishes the fact that cutting was going on nearly, if not fully, 24 hours after the service of the order of injunction by the deputy marshal, who testified that he served Ritter with a copy of the order on Monday, the 13th day of January, 1896, shortly after 3 o'clock of the afternoon of that day. This is the time fixed by the marshal when actual service and notice was had. Ritter knew that John Green, one of his employés, with his force of axmen, was cutting on the left-hand fork of Elkhorn when he was served with the order; yet, without taking prompt measures to stop him, he cut timber during the entire day on the 14th, or 24 hours after the service of the order of injunction. Another witness, an employé of Ritter, proved that he cut logs on Tuesday, which were hauled to the mill and converted into lumber. The evidence of other witnesses tends to show that the cutting and removing of timber continued up to the evening of the 14th, which establishes the fact that there was a seeming indifference upon the part of the defendant in respecting the order of the court, if in fact there was not a willful violation of its order. But it is not necessary to rest the conclusion of the court upon the fact that the order of injunction was violated after the actual service of it upon the defendant. The evidence shows that the marshal was in search of Ritter on Friday, the 10th of January, to serve him with a copy of the order; that, about 3 o'clock of that day, Rucker and Hamill, the counsel of Ritter, and who were his retained attorneys, and had been for three years, read the order of injunction in the hands of the marshal. Ritter admits he heard of it the same evening; that Mr. Beevers had informed him that the marshal had it and was looking for him. It is unnecessary to notice the fact at this time that he and his counsel went to Charleston to confer with the counsel of Iaeger, which exhausted three days, during which time the order of injunction was utterly disregarded. The counsel for defendant seek to relieve him from the responsibility of his conduct in this respect, contending that knowledge thus acquired, of the existence of the injunction, had no legal and binding effect upon him. I cannot agree with them in their position, and I am unable to find, either in the text-books or adjudicated cases, any authority to sustain such a position. If such a position could be maintained, it would destroy, to a great extent, the effect of the restraining powers of courts of equity, and their usefulness would be greatly impaired. I hold the unquestioned law to be that an injunction becomes operative from the time the order was made, and effective upon the party from the time he has notice of its existence. It is a matter of no moment how the defendant acquired the information of its existence. When once he has been apprised of the fact, he is legally bound to desist from

doing what he is restrained and inhibited from doing. If this were not the rule, often great injury could be inflicted, in numberless cases, though the mandate of the court was in existence. Mr. High states the law to be "that any means of information whereby notice of the order is actually brought to the knowledge of the parties enjoined is sufficient." And this position is well sustained by the great weight of authority. A sporadic case may occasionally be found where there is an effort upon the part of the court to distinguish the case under consideration from what is accepted as being the rule of law. Cases of this character stand alone, and only rule the law in the case decided, and are, by the great weight of authority, overruled. It therefore follows from what I have said that, if the defendant Ritter became informed and was aware of the existence of the order, it was his duty at once to take the necessary steps to comply with its mandate, for the reason that it became operative upon him from the moment he acquired such information. Not to do so is a contempt of the order of the court, for which he must answer. The suggestion that the defendant was acting under the advice of counsel furnishes no excuse for his conduct, but courts, in determining the degree of any punishment they will inflict for the violation of their orders, always give weight to that fact, when they are assured that such advice was given in good faith. In view of what has been said, I reach the conclusion that orders of courts must be respected as long as they have a legal existence. No one has a right to determine for himself whether he will respect or disregard an order of court, and if he does so, of his own volition, or in pursuance of legal advice, he merely takes the law into his own hands, and must answer for his conduct, whether the order of the court was right or wrong. Having reached the conclusion that the defendant Ritter was guilty of a violation of the order of injunction issued by the court, it remains for the court to determine the degree of punishment to be inflicted for such violation of its order. I am unable to find from the facts that the defendant willfully disregarded the court's mandate, but acting under the advice of counsel, as well as making an effort to adjust the differences between him and the plaintiff Iaeger, he did not promptly take the steps he should have taken, for at least three days, to comply with the mandate of the court. Under all the circumstances of this case, I have reached the conclusion to impose only a fine of $100, and costs; and, if not promptly paid, execution will issue at once.

In this case the defendant also asks for a modification of the order of injunction, based mainly on the ground of delay upon the part of the plaintiffs in the assertion of their rights, which he claims was equivalent to acquiescence on their part. The defendant Ritter admits that he purchased a timber right of the Elkhorn & Sandy River Land Trust on the 31st day of July, 1894. He also admits that the agent of the plaintiffs served a notice upon him July 27, 1894, four days before he executed the contract for the purchase of the timber right, which notice informed him of Iaeger's right. In addition to this there was printed in a newspaper of

general circulation in the county a notice by Iaeger warning all parties against cutting timber or committing waste upon his lands. The defendant admits that he knew of this publication, but seeks to shelter himself behind the fact that he did not know where the lines of Iaeger's survey run. In this connection, it is apparent from the evidence that the lines of these surveys was the subject of more or less discussion, not only in the neighborhood of defendant's operations, but in the county generally. It is true that Iaeger did not promptly institute legal proceedings against the defendant, who had a pocket contract with the Elkhorn & Sandy River Land Trust. This, to some extent, is accounted for by the absence of Ulman, who was a joint owner of the land with Iaeger, and who for a long time was absent from this country, in foreign lands. It appears that it was necessary to have his co-operation, arising out of the fact that there was some friction and dispute between Iaeger and Ulman as to their respective interests in the land, and that Iaeger was advised by counsel that he could not well proceed without the consent of Ulman, which, to some extent, accounts for the delay complained of in bringing suits. Ritter's contract was executed, as we have seen, on the 31st day of July, 1894. On the 18th day of July an injunction was obtained by the plaintiffs against the vendors of Ritter, their agents and assigns, to stop the commission of waste on the land in dispute. The plaintiffs allege that at the time they sued out that injunction they had no knowledge of Ritter's contract with the defendants, which was in his pocket and not recorded, and for this reason they did not make him a defendant in the first bill of injunction. This injunction was obtained less than one year after Ritter had executed his contract under which he was operating. It is fair to presume that, when Ritter's vendors were served with the injunction, they must have informed Ritter, their vendee, of that fact. On the 18th day of September, 1895, the plaintiff brought suit against the defendant and his vendor to assert his title to the lands in controversy. Can it be said that notice given to Ritter just after he commenced work on the land before his contract was executed, and with injunction served on his vendors within a year, and an action of ejectment brought against him and his vendors in a little over a year, that there was such delay as to justify the court in modifying the order of injunction? I think not. He had notice of the plaintiffs' rights at once. In fact, this notice was given before his large mill was placed on the land; for it is shown that, for some reason, he delayed for some time the placing of this mill on the disputed land, leaving it on the side track of the railroad. He knew before he placed it on the disputed land that Iaeger and Ulman claimed the land, and he was evidently waiting to determine his action after he had the notice served upon him. Such action on his part is in accord with the common history of the owners and claimants of the timber lands in our state. They pay but little, if any, attention to each other's rights. Independent of the facts to which we refer, I think there was no such unusual delay in this case—admitting there was a delay of 18 months, as claimed by the defendant—

as amounted to an acquiescence in defendant's acts. The injunction in this case is not embraced in that class of cases where orders are obtained simply for harassing and annoying the defendants. Here are actions of ejectment pending to try the title. This injunction is ancillary to that proceeding to preserve the status quo of the land in controversy. I held in the case of King v. Buskirk,[1] that an injunction for that purpose was proper; that the rights of all parties might be preserved during the litigation. This position was most vigorously contested, but it was sustained by the appellate court, and is universal law. It is laid down as law by Mr. High that, "when a state of things connected with the property touching which an injunction is sought has remained undisturbed for a long period of years," a preliminary injunction will not be granted. There is no such state of things in this case. The suits were all commenced inside of two years, and even the delay in commencing suits for that period of time is, as we have seen, accounted for. There is no such long acquiescence on the part of the plaintiffs as the law contemplates, which would justify the court in modifying the order of injunction in this case. This is a case somewhat different from the class of cases where courts modify injunctions. It is not an unusual thing for courts to modify an injunction when the order does not disturb the status of the property. But when the order modifying the original order would have that effect, as in this case, courts rarely do so.

The contention that the plaintiffs, by their silence after the notice given by them to the defendant, acquiesced in his conduct, is not supported by the facts. But suppose they relied on their notice, and took no legal steps after it was given; would they be estopped by what he presumed was an apparent acquiescence? I think not. Their title was of record in the county in which the greater portion—if not, in fact, all—of the land lies; and they had a right to presume that, after prompt notice of their claim of title, the defendant would not persist in the commission of waste without some effort on his part to fully inform himself as to the rights of the different claimants to the land in controversy. But it does not appear that he made any such effort. On the contrary, seemingly contented, and resting on his supposed rights, he ignored the notice the plaintiffs had served upon him, and continued his operations, apparently without regard to consequences. I hold that these plaintiffs have a right to preserve every tree standing on the disputed land until the court holds their title is not good as against the defendants. In contemplation of law, and for the purposes of this injunction, the land belongs to them, and every stick of timber standing on it belongs to them. I ought not to enter an order which operates to coerce these plaintiffs to sell their timber against their will, under the conditions that exist in this case. Courts may and do enforce contracts, but they never make them, between parties. To grant the motion in this case, modifying this injunction, would, in effect, be a contract between the court

[1] No opinion filed.

and the defendant for the sale of this timber, depriving the plaintiffs of their legal right to participate in making the contract. I cannot lend my sanction to such legal proceedings, and, for the reasons assigned, decline to modify the order of injunction heretofore made. An order will be prepared continuing the injunction until the further order of the court.