RITTER v. ULMAN et al.

(Circuit Court of Appeals, Fourth Circuit. February 2, 1897.)

No. 174.

1. INJUNCTION—ESTOPPEL BY ACQUIESCENCE—CUTTING TIMBER.

One R. agreed with the E. Co. for the purchase of certain timber lands, and, with its consent, began to cut the timber. Shortly after this agreement, and before the formal contract of sale was executed, certain parties, claiming the land, notified R. of their claim, and forbade him to cut the timber. They then brought an action of ejectment against the E. Co., and, upon a bill filed against it, obtained an injunction restraining it from cutting timber on the land. Later, but within little more than a year from the making of R.'s agreement with the E. Co., the claimants brought an action of ejectment against R., and, upon a bill filed, obtained an injunction restraining him from cutting the timber, which injunction R. moved to dissolve. Held, that there had been no such acquiescence on the part of the claimants as to estop them from claiming an injunction against R. 72 Fed. 1000, affirmed.

2. APPEAL—DISCRETION OF COURT—DISSOLUTION OF INJUNCTION.

An appellate court will not interfere with the exercise of the discretion of a chancellor in refusing to dissolve an injunction, either absolutely or upon condition of giving security, unless there is manifest error in the conclusion reached by him.

Appeal from the Circuit Court of the United States for the District of West Virginia.

Malcolm Jackson and Edgar P. Rucker, for appellant.

S. L. Flournoy (James H. Ferguson, on the brief), for appellees.

Before SIMONTON, Circuit Judge, and MORRIS and BRAWLEY, District Judges.

SIMONTON, Circuit Judge. This case comes up on appeal from the circuit court of the United States for the district of West Virginia. The appellant in 1894 purchased from the trustees of the Elkhorn & Sandy River Land Company the timber of certain kind and character growing on a tract of land of about 6,000 acres, in

McDowell county, W. Va., described as the "Watershed of Brown's Creek." The contract of purchase was formally executed 31st July, 1894. The appellant, however, under a verbal agreement, had already commenced to cut timber off the land. On 27th July, 1894, Iaeger, one of the appellees, verbally and in writing notified Ritter, the appellant, that he claimed a part of the land the timber from which the land company had undertaken to sell, and forbade him to cut any timber on it. Subsequently the appellees brought their action of ejectment against the trustees of the Elkhorn & Sandy River Land Trust, and a number of other parties, claiming that they were owners of a tract of land of 150,000 acres, granted to Robert Pollard, by patent dated 20th March, 1795, and held by them by virtue of sundry mesne conveyances, and that the defendants were trespassing thereon. After said suit was instituted, a bill was filed in the circuit court of the United States for the district of West Virginia, on 22d July, 1895, praying an injunction against the defendants in the ejectment suit, restraining them from cutting timber on the lands claimed by plaintiffs in said suit, which injunction was granted. Ritter was not a party eo nomine in these suits. An action of ejectment was then brought against Ritter and a large number of other persons, by the appellees, on 18th September, 1895, and, on 30th December following, a bill was filed praying a similar injunction against Ritter, and a preliminary injunction was granted, with a rule to show cause why it be not made permanent. Ritter applied to the court to dissolve and annul this injunction, or, if the court refuse to dissolve the same absolutely, then to dissolve the same upon allowing the defendant, Ritter, to give such bond or security as the court may deem proper for the protection of such rights and interests as plaintiffs may have in the subject of litigation, or, if this be refused, then to modify the injunction to such extent as the defendant may show himself entitled to. The court refused to dissolve the injunction, either absolutely or on terms, or to modify it in any way. 72 Fed. 1000. This is assigned as error, and the case comes here under this assignment.

The appellant in the court below based his application for the dissolution of the injunction on two grounds: First. That he had been misled by Mr. Strother, the attorney at law and in fact of one of the appellants, who had advised him to go on cutting the timber. This is denied positively by Mr. Strother. Such conduct on the part of an attorney, who was at the time actively asserting the rights of his principal, is, to say the least, improbable. The judge below solved the matter on the denial of Mr. Strother. It is to be presumed that he knew the persons. We will not disturb his conclusion. Second. Ritter, in his motion, relied upon the delay of the complainants in applying for an injunction for so long a time while they knew, or had the means of knowing, that he was cutting timber, and he contends that this shows acquiescence on their part in his acts. In order to constitute the estoppel, or quasi estoppel, by acquiescence, the party, with full knowledge or notice of his rights, must freely do what amounts to a recognition of

the transaction, or must act in a manner inconsistent with its repudiation, or must lie by for a considerable time, and knowingly permit the other party to deal with the subject-matter under the belief that the transaction has been recognized, or must abstain for a considerable time from impeaching it, so that the other party may reasonably suppose that it is recognized. Pom. Eq. Jur. § 965; Simmons v. Railway Co., 159 U. S., at page 291, 16 Sup. Ct. 1. But it appears in the record that at the very beginning of his enterprise, even before the date of his contract with his vendors, Ritter had prompt and decided notification from complainants not to go on these lands, and not to cut the timber, which notification was repeated to him in person, followed up by suit in ejectment and by bill for injunction against his vendors and against himself. There was no standing by and permitting him to invest capital, settle plant, and spend money, without objection or protest. There was prompt notice and objection, and whatever he did after that was at his own peril. The complainants had a right to expect that their notice and remonstrance would bring fruit, and, when they discovered that, notwithstanding these, he persisted in the acts they deemed unlawful, they invoked the assistance of the law court and the preventive process of the court of equity long before, under the statute of limitation, their right would be barred. They cannot be charged with acquiescence.

But is it contended that the court erred in not dissolving the injunction on terms, and in not permitting the appellant to give bond for the timber he should cut pendente lite? The granting or the refusal of an injunction rests in the sound discretion of the court. Poor v. Carleton, Fed. Cas. No. 11,272. It is a power requiring great caution, deliberation, and sound discretion, and involves responsibility. The right set up must be clear, the injury must be impending, and so threatened that it can be averted only by the preventive process of the court. The judge who granted this injunction has had great and unusual experience. He was possessed of all the facts of the case, and of the peculiar circumstances surrounding it. His exercise of his discretion, no doubt, was the result of calm deliberation. It could only be set aside for manifest error in the conclusion he reached. He concluded, as a matter of fact, with all the affidavits filed in the case before him, that the land in dispute here were chiefly valuable for the timber upon it; that cutting the timber would naturally destroy its chief value; that not only was the timber in itself specially valuable, but that it was necessary to utilize and develop whatever coal there was in the land. Under this conviction, he determined to preserve the status quo. We are not prepared to say that he erred.

The decree of the circuit court is affirmed.