RODGERS v. PITT et al.

(Circuit Court, D. Nevada. August 12, 1898.)

1. INJUNCTION—PROCEEDINGS FOR VIOLATION—DEFENSE.

Defendant was enjoined from withdrawing water from a stream to prevent a certain quantity from reaching the dam of plaintiff below. Defendant afterwards purchased the right of another user above, returning the water so acquired to the stream, and withdrew a quantity at his own dam, in violation of the terms of the injunction. Held that, without considering the question of priority between the right purchased and plaintiff's right, defendant was not relieved of contempt because, in his judgment, he had increased the volume of the stream at his dam, by the water returned, by an amount equal to the quantity withdrawn, where the evidence failed to sustain such claim.

2. SAME—ACTING IN GOOD FAITH.

A party who violates the letter of an injunction in reliance on his judgment that he does not violate its spirit acts at his peril, and, if mistaken, his good faith is no defense.

3. SAME—ADVICE OF COUNSEL—MITIGATION OF PUNISHMENT.

The fact that a defendant, in the violation of an injunction, acted under advice of counsel, is no justification or defense, but is proper to be considered in mitigation of his punishment.

Proceedings for contempt against W. C. Pitt, for violating an injunction.

This court, on the 12th day of July, 1898, after a full hearing upon a rule to show cause, granted a temporary injunction, and ordered that the defendants, "and each of them, their agents, servants, and employés, be, and they and each of them are hereby, enjoined pending this suit, and until the further order of the court, from diverting or in any manner using the water of the said Humboldt river so as in any manner to prevent 3,500 inches thereof, measured under a four-inch pressure, from flowing in the natural bed or channel of said river to the head of complainant's ditch, known as the 'Marker Ditch,' or so as in any manner to deprive the complainant of the use of said 3,500 inches of water for the irrigation of the crops of grain and alfalfa growing on complainant's land, and for watering stock and for domestic uses." See 89 Fed. 420. On August 6th, the complainant filed an affidavit setting forth that W. C. Pitt did on July 26th, and at various other times, "wrongfully, unlawfully, intentionally, knowingly, and willfully violate the said injunction," and did "wrongfully and unlawfully, knowingly, and intentionally divert 500 inches, or thereabout, of the waters of the said Humboldt river, above the lands and ditches of the said complainant," and deprived complainant of the use thereof. Upon the filing of this affidavit, an order was made and served requiring the defendant W. C. Pitt to appear on August 10th, and show cause, if any he could, why he should not be punished for contempt. On that day the defendant filed an affidavit in answer to complainant's charges, setting forth, in substance, that, since the preliminary injunction was issued, the defendants had, by purchase and agreement, obtained another and different right to the use of the waters of the Humboldt river from any that belonged to them at the time of said hearing, or that was in any way involved or considered upon the hearing of said order to show cause; that, on or about the 20th of July, they entered into an agreement with one Frank Clark, who was the owner and in possession of what is known as "Clark's Ranch," situated upon the Humboldt river, whereby Clark agreed to sell and convey to the defendants all of his lands, and all of his right, title, or interest in and to the waters of the Humboldt river: that, upon the execution of this agreement, the water then flowing upon the ranch belonging to said Clark was turned into Humboldt river, and allowed to flow down to the ditch and dam of the defendants; that, upon the same reaching the defendant's ditch, they diverted not to exceed 300 inches of the same from said river, for the purpose of irrigating their lands and stock, and for domestic uses; "that in making said purchase, and in changing the point of use of the waters aforesaid, the defendants consulted with and acted under the advice of their counsel, and did so for the honest purpose of saving loss and suffering to themselves, and without any purpose or intention of disregarding the injunction of this court." The defendant denies that any act of his or any act of the defendants has deprived the complainant or his lands of the use of any water whatever; denies that he has ever in any manner prevented any water from flowing in the natural channel or bed of said river to the head of complainant's ditch that would have flowed down to said ditch, or that he has in any manner deprived the complainant of any water, or the use thereof, for the irrigation of his land and watering stock and domestic purposes; and denies that he has in any manner been guilty of any contempt of court.

The testimony given at this hearing is to the effect that Clark owned a ranch on the Humboldt river, some 50 or 75 miles, following the sinuosities of the river, above the point where the Pitt dam is located, and had acquired a water right of about 2,000 inches for the purpose of irrigating his said land, and had so used the water since the year 1865 or thereabout; that he also had a five-stamp quartz mill on his land near his dam; that, when he used the water for irrigating his land, it was diverted away from the river; that, when he used the water to run his quartz mill, it flowed back into the river; that this water right was owned equally between him and one Blakeslee, who owned lands adjoining and below Clark's; that the water, by agreement of the parties, was all to be used (as per written agreement

between them) by Clark from the 1st to the 15th of each month, and by Blakeslee from the 15th to the 30th of each month; but, by a verbal agreement made this year between Clark and the successor of Blakeslee, the dates were changed so that the Blakeslee ranch should have it from the 5th to the 20th of each month, and Clark should have it from the 20th to the 5th of the next month; that the defendant Pitt, on July 20th, procured an option for the purchase of Clark's title to the land and water, and paid Clark the sum of $250 cash; that other payments were to be made from time to time, amounting in all to the sum of $8,000. When this option was procured, the water at the Clark dam, estimated at 2,000 inches, was turned into the Humboldt river. The defendant Pitt testified that, four days after it was turned in, he noticed at the Pitt dam an increase of the water, and estimated it, as best he could, by looking at it. He thought there was at least an increase of 300 inches in the flow of the water in the river, and he turned out that amount, and ran the water through the Pitt ditch, for the purpose of irrigating some trees, his garden, and about 10 or 12 acres in potatoes, and for watering his stock, etc. The testimony of the witnesses on behalf of the complainant was to the effect that there was no increase in the flow of the water in the Humboldt river after the 20th of July, but in fact the water had been constantly decreasing daily from that time; that the amount of water at the head of the Marker dam, flowing into the Marker ditch, was not in excess of 800 inches; that the amount of water flowing in the Pitt ditch on the 8th of August was estimated by them to be about 500 inches. There were no measurements of the water taken at any point. No attempt was made to ascertain the amount with any accuracy. It was all guesswork.

R. M. Clarke, for complainant.
R. R. Bigelow, for defendant Pitt.

HAWLEY, District Judge (orally). From the foregoing facts it will be seen that the defendant Pitt admits a technical violation of the letter of the injunction, but denies any violation of its spirit. He seeks to justify his acts upon the ground that he and the other defendants in the suit have, since the injunction, procured an independent title to a water right not then litigated or considered, which is prior in date to any right of complainant to the waters of the Humboldt river. His contention is that not only the question of Clark's title to the water must be held in abeyance, but that the defendant, having acted in good faith, without any intent to violate the injunction, should be discharged; that complainant's remedy, if any he has, is by commencing a new suit against the defendants, and procuring another restraining order or temporary injunction, pending the trial of such suit. The following authorities are cited in support of this contention: Mahoney v. Van Winkle, 33 Cal. 448, 458; Larrabee v. Selby, 52 Cal. 506; Ex parte Hollis, 59 Cal. 406; Ex parte Casey, 71 Cal. 269, 12 Pac. 118. These authorities, while having some analogy to some of the principles involved herein, are wholly unlike in their facts, as will fully appear by a brief reference thereto. In Mahoney v. Van Winkle and Larrabee v. Selby, which were actions of ejectment, it was held that a person against whom a judgment is recovered in ejectment, and who is removed from the land by a writ of restitution, is not guilty of contempt for re-entering on the land if an event has occurred after the judgment, and before the re-entry, which confers upon him the right of possession. In Ex parte Hollis the petitioner had been adjudged guilty of contempt for refusing to turn over certain money and goods claimed by him adversely to a corporation.

It was held that the court had no control or jurisdiction over the petitioner or his property, and could not, by any mere order to show cause why he should not be punished for contempt, adjudge his right to the property in a summary way. And it was suggested that the court below should have ordered a suit to be instituted against the petitioner to set aside the conveyance and transfer under which he claimed the property adversely to the insolvent debtor. In Ex parte Casey, which was a proceeding under certain sections of the Code for the settlement of the estate of a decedent, it was held that the superior court had no power to order property in possession of a person claiming title thereto to be delivered up to the executor or administrator, or deposited subject to the order of the court, and that the refusal of the person claiming title to obey such an order was not a contempt of court. These cases are applicable upon the point that upon this hearing the question of title to any newly-acquired right to the land or water could not be determined. This is admitted by both parties. The law upon this point is well settled. Proceedings to punish a party for a contempt are not the appropriate proceedings for the trial of the issues of title. Such summary proceedings were never designed for any such purpose.

If the question involved a determination of the title to the land, property, and water rights which the defendant had an option to purchase, then other questions would be presented as to whether or not the defendant, by a mere option to purchase, could compel complainant to try the title, etc. There are doubtless many cases where an injunction has been issued restraining persons from any interference with specific property where it is held that the injunction should not be so construed as to prevent them from exercising subsequently acquired rights therein when a wholly different situation exists from that heard and determined at the time the injunction was issued. But every case depends upon its own peculiar conditions, and it does not necessarily follow that in all cases a mere change in the conditions or the acquisition of new rights will prevent a party from being adjudged guilty of contempt. In Woodruff v. Mining Co., 27 Fed. 795, the defendant was proceeded against for contempt in violating an injunction which enjoined it from discharging into the Yuba river any of the tailings, gravel, or débris from its mine. The matter was referred to a master, who found that defendant "had been continuously engaged in practical drift mining in its mine," and had discharged tailings into a tributary of the Yuba river, and by such acts had violated the decree, and was in contempt. Several exceptions were taken to this report,—among others, that the testimony was not strong; that it was not shown that the violation of the injunction was willful; and it was contended that there was no violation of the injunction, and no intent to violate it, because drift mining and its incidents were not within the terms of the injunction against the defendant when engaged in hydraulic mining. The court sustained the master's report, and imposed a fine of $1,500 as a punishment for the contempt. In the same case (45 Fed. 129, 131), after the defendant had erected impounding works, the court held that defendant could not be held guilty of contempt "upon the simple showing of discol-

ored and muddy water having been found at the mouth of the tunnel." But in that case it was suggested that the better course for the defendant to pursue was to move for a modification of the injunction, which was afterwards done.     U. S. v. North Bloomfield Gravel Mining Co., 53 Fed. 625.

If the issues presented by the affidavits in this case depended solely upon whether Clark's title to the water was prior or subsequent to that of complainant, a different question would arise.     But conceding for the purpose of this opinion all that is claimed by the defendant in that respect, and of his right to change the point of diversion of the water providing other parties were not injured thereby, it does not necessarily follow that the contention of defendant's counsel should be sustained.     The question for decision is one of fact,— whether the defendant, by his acts, has deprived the complainant of the use of any of the waters of the Humboldt river to which he is entitled by the terms of the injunction.     If the testimony was of such a character as to convince the court that the act of defendant had increased the quantity of water at the Pitt dam to as great, or greater, extent than the quantity of water turned out by the defendant into the Pitt ditch, the court would have no hesitation in discharging the defendant, upon the ground that he had not violated the spirit of the injunction; and this should and would be done without regard to the question whether the title of Clark was prior or subsequent to the title acquired by complainant.     Complainant would not be injured or damaged, or the spirit of the injunction violated, unless the act committed by the defendant resulted in reducing the quantity of water which but for his acts would have reached the Marker ditch, and flowed down to complainant's land.

There was no attempt to show by the testimony of engineers or other persons how much of the water from Clark's ranch, at the present low tide of the water in the river, which is constantly decreasing, would arrive at Pitt's dam, owing to the great distance between the two points, and the amount of water which would be lost by percolation, evaporation, and absorption along the banks and bed of the river, and from other causes.     I am unable to say from the evidence given upon this hearing that if defendant is allowed to divert the quantity of water he has been, and is now, using, it would not injure the complainant, or that it would not constitute a violation of the injunction.     On the other hand, I am of opinion that the weight and preponderance of the evidence lead inevitably to the conclusion that the acts committed by the defendant have resulted in a clear violation of the order made by the court, both in its letter and spirit. It is the duty of courts to compel obedience to their decrees and orders. It would lead to endless confusion and uncertainty to allow parties against whom an injunction has been issued to be themselves judges of the propriety of the relief to which they think they are entitled. Owing to these and other manifest and obvious reasons, I am of opinion that the proper proceedings to be taken in a case like the present, where the defendant claims to have acted in perfect good faith, would have been for him to have applied to the court for a modification of the injunction, so that his rights could have been fully heard

and determined without any danger of his being punished for contempt. This would certainly be a safer course for a party enjoined to pursue.

The defendant in this case was bound to obey the injunction, and, when he interfered with the court's order, he was acting at his peril. He certainly ought not to have acted upon his own judgment as to what his rights were, when it was manifest that his acts would, at least, amount to a technical violation of the terms of the injunction. It was not for him to set up his own opinion as to the meaning and effect of the injunction. If he entertained any doubt as to what he might do without violating the injunction, he should have applied to the court for a modification of the injunction, or for the privilege of doing certain acts which, by the advice of counsel, he claims he had the right to do.

In 2 High, Inj. § 1416, it is said:

"If defendant is in doubt as to the scope or extent of the injunction, he should not willfully disregard or violate it, with a view of testing such questions, but should apply to the court for a modification or construction of its order."

See, also, Wells, Fargo & Co. v. Oregon Ry. & Nav. Co., 19 Fed. 20, 22; Ulman v. Ritter, 72 Fed. 1000, 1003; Wilber v. Woolley, 44 Neb. 739, 743, 62 N. W. 1095; Magennis v. Parkhurst, 4 N. J. Eq. 433, 436; Shirk v. Cox, 141 Ind. 301, 304, 40 N. E. 750; People v. Bouchard (Sup.) 27 N. Y. Supp. 201, 202.

The belief, motive, or intent of the defendant not to violate the injunction does not excuse him if in fact his acts resulted in a violation of it. The breach of the injunction consists in doing the forbidden thing, and not in the intention with which it is done. Cartwright's Case, 114 Mass. 230, 239; Thompson v. Railroad Co., 48 N. J. Eq. 105, 108, 21 Atl. 182; State v. Bowman, 79 Iowa, 566, 44 N. W. 813; Baker v. Cordon, 86 N. C. 116, 121; Plate Co. v. Schimmel, 59 Mich. 524, 528, 26 N. W. 692; 2 High, Inj. § 1418; 7 Am. & Eng. Enc. Law (2d Ed.) 76, and authorities there cited.

In 1 Beach, Inj. § 250, the author says:

"The opinion of the party enjoined that he is not violating the injunction does not excuse the violation. But if he acts in good faith, and under advice of counsel, and causes but trifling injury to the enjoining party, his offense is mitigated."

Courts are always disposed to allow a fair latitude of construction as to the terms of the injunction, and in many cases only require that it should be obeyed in its spirit, so that no injury should be occasioned to the complaining party. But they are never inclined to look with any degree of indulgence on schemes which are devised to thwart their orders. Any person who has been enjoined, who undertakes to see how far he can go or what he may do without crossing the prohibited line, places himself in a dangerous condition, and is always liable to be deemed guilty of contempt; for his own judgment may be so warped by his feelings or necessities that he is liable, even unintentionally, to overstep the legal bounds.

In High, Inj. § 1427, the author says:

"It is not proper for a defendant who has been enjoined to experiment with a view of determining how near he may come to a violation of the injunction without actually violating it."

See, also, Craig v. Fisher, 2 Sawy. 345, 347, Fed. Cas. No. 3,332.

The difficulty which he encounters in determining, in his own mind, what he can do without disobeying the injunction, forms no excuse for violating it. If he knowingly violates the injunction, he may be punished for contempt of court, although he would be entitled to have the injunction modified or discharged upon the trial of the merits of the case.

I am satisfied, from the evidence in this case, that the defendant did not act willfully in the premises, and that he merely intended to test the legal question, and believed that he could do so without violating the injunction; but in so acting he did disobey the injunction. In such cases the courts have generally, if not universally, held that only a moderate punishment should be imposed. When the advice of counsel has been sought and given in good faith, it constitutes an important element in determining what the judgment of the court should be. It should always be considered by the court in mitigation of the punishment, but it does not constitute any justification or defense for a violation of the injunction.

The rule upon this subject is clearly stated in High, Inj. § 1420, as follows:

"As regards the rights of persons affected by an injunction, the fact that defendant has violated the mandate of the court under the advice of counsel constitutes no sufficient ground of defense in his favor. We have already seen that the motive with which the breach is committed constitutes no excuse for the wrongful act, and equity will protect persons affected by the writ from any violation of its terms, even though committed under the sanction and advice of counsel. * * * It is to be observed, however, that, while the fact of defendant having committed the breach under the advice of counsel * * * affords no justification for his conduct, yet, if such advice be given in good faith, it may properly be taken into account in determining the degree of punishment to be inflicted for the breach, and may thus palliate, although it cannot justify, the violation." Transportation Co. v. Ciancimino (Sup.) 17 N. Y. Supp. 125, 127; West Jersey Traction Co. v. Board of Public Works of Camden, 58 N. J. Law, 536, 540, 37 Atl. 578; 1 Am. & Eng. Enc. Law (2d Ed.) 898, and authorities there cited; 7 Am. & Eng. Enc. Law (2d Ed.) 77.

The judgment of the court is that defendant pay the costs of this proceeding (about $75), and, upon payment thereof, that he be discharged from custody.