BLAKE et al. v. NESBET.

(District Court, W. D. Missouri, W. D. November 13, 1905.)

No. 223.

1. INJUNCTION—VALIDITY—PLACE OF SERVICE.

A defendant is bound by a preliminary injunction or restraining order issued against him by a court of equity from the time he has actual notice of it, and it is immaterial that it was served upon him at a place outside of the territorial jurisdiction of the court.

[Ed. Note.—For cases in point, see vol. 27, Cent. Dig. Injunction, §§ 446.]

2. BANKRUPTCY—SUIT BY TRUSTEE—INJUNCTION.

The fact that a defendant claims as his own money admitted to have been paid to him by a bankrupt within four months prior to the bankruptcy, on the ground that the payment was made to him as a creditor, does not affect the jurisdiction of a court of bankruptcy in a plenary

suit brought by the trustee to recover such money as a voidable prefer-
ence, or as a transfer in fraud of creditors under Bankr. Act July 1,
1898, c. 541, § 60b, or section 67e, as amended Act Feb. 5, 1903, c. 487,
§§ 13, 16, 32 Stat. 799, 800 [U. S. Comp. St. Supp. 1905, pp. 689, 690], to
issue a temporary injunction restraining him from disposing of the
same.

3. INJUNCTION—VIOLATION—CONTEMPT PROCEEDINGS.
       A defendant who has disobeyed a temporary injunction, when cited
for contempt, cannot justify his disobedience on the ground that the in-
junction was improvidently or erroneously granted.
       [Ed. Note.—For cases in point, see vol. 27, Cent. Dig. Injunction, §§
440, 441.]

Proceeding for Contempt.  On exceptions to return.

Karnes, New & Krauthoff, for complainants.

James H. Harkless, for defendant.

PHILIPS, District Judge.  On the 21st day of June, 1905, the com-
plainants presented and filed their bill of complaint in the above-
entitled cause against Charles W. Nesbet, defendant.  The bill of
complaint recited that on her petition in voluntary bankruptcy Mary
G. Nesbet, doing business as W. E. Cannon & Co., was adjudged a
bankrupt by this court; that on May 15, 1905, the complainants were
duly elected and qualified as trustees in bankruptcy of said estate;
that the said Mary G. Nesbet, within four months next preceding
the filing of her petition in bankruptcy and the adjudication in bank-
ruptcy, with the knowledge and consent of the defendant, Charles W.
Nesbet, who was and is her husband, sold and disposed of diamonds
belonging to the bankrupt estate for $3,500; that this sale was made
with the intent to hinder, delay, and defraud her creditors, and that,
in furtherance of said purpose to hinder, delay, and defraud her cred-
itors, she delivered to the defendant $3,500 in currency as the proceeds
of said sale; and that the defendant, at the time of filing the bill, had in
his possession and under his control the sum of about $2,830, and that
he took and received the same with full knowledge that the same was
in fraud of the bankrupt act; that the defendant makes claim of in-
debtedness of said bankrupt to him, and that said money was paid
to him on account of such indebtedness.  The bill further alleged that
at the time of such transfer of said property to said defendant the
said Mary G. Nesbet was insolvent, and that, if in fact (which fact
is denied) the said bankrupt was indebted to the defendant in any
sum, the said transfer and payment to him created a preference in
favor of said defendant as a creditor of said bankrupt, within the con-
templation of the bankrupt act.  The bill further alleged that the de-
fendant is wholly insolvent, and unless he should be restrained by the
order of this court he would dispose of the currency in his possession,
and would thereby withdraw the same from the administration of the
bankrupt court, and that demand had been made upon him to pay
said money over to the complainants as trustees in bankruptcy, which
he had failed to do.  The bill prayed that the defendant be decreed to
hold the said property in trust for the complainants, and that he be
decreed to deliver the same to them, and that pending the suit the
court issue a provisional restraining order restraining the defendant

from in any manner disposing of said sum of $2,830 in currency in his possession, and that he be commanded to hold said money and property subject to the further order of the court, and to order such money to be deposited in some safe place.

At the time of the presentation of this petition the defendant's counsel was present in court and had notice thereof, but did not enter appearance thereto. On the same day the court issued a restraining order, ordering that until the further order of the court the defendant be restrained from in any manner disposing of said sum of money or any other sum of money which might be in his possession the property of the complainants therein, and especially was he restrained and enjoined from disposing of any portion of the sum of $3,500 theretofore received by said bankrupt and delivered by her to the defendant. The defendant was directed to appear before the court at Kansas City, Mo., at 10 o'clock a. m., on the 26th day of June, 1905, to show cause, if any he had, why a temporary injunction should not issue. A copy of this order was served by Edwin R. Durham, United States marshal for this district, by delivering a true copy to the said Mary G. Nesbet, a member of the family over the age of 15 years of the said Charles W. Nesbet, at his usual place of abode in Kansas City, Jackson county, Mo., on June 21, 1905, and by delivering a true copy thereof to James H. Harkless and Clifford L. Histed and to Mary G. Nesbet on the 21st day of June, 1905, at Kansas City, Jackson county, Mo. The said Edwin R. Durham, in his individual capacity, also made return, sworn to on the 22d day of June, 1905, that he delivered a true copy of said restraining order to the said Charles W. Nesbet at Leavenworth, in Leavenworth county, state of Kansas, on the 21st day of June, 1905, at 9:45 o'clock p. m. The defendant made no appearance to said restraining order; and the same by its terms continues in force. A subpœna in chancery issued out of the clerk's office of this court on said bill of complaint on the 21st day of June, 1905, summoning the defendant to appear and answer to the bill of complaint on the first Monday of August, 1905, which subpœna was served on the 21st day of June, 1905, by delivering a certified copy of the same to Mary G. Nesbet, a member of the family over the age of 15 years of said Charles W. Nesbet, at his usual place of abode in Kansas City, Jackson county, Mo. On October 6, 1905, the defendant filed answer to said bill of complaint, taking issue upon the facts alleged therein as to the alleged fraudulent sale of said diamonds, and the fraudulent turning over to him of the money as alleged in the bill of complaint; but in fact admitting that he received the money, and set up a claim thereto on account of the indebtedness of his said wife or said firm to him.

On November 1, 1905, the complainants filed information in this court in said cause, charging that the defendant had disobeyed and disregarded the said restraining order of the court by disposing of all of said money in his possession at the time of making said restraining order, with the exception of $650, asking that the defendant be cited to appear before this court to show cause why he should not be punished for a contempt of court for disobedience of said order. Citation issued accordingly, and was duly served on the defendant, and

on the 6th day of November, 1905, he made return thereto, and as a reason why he should not be punished as for a contempt in violating said restraining order pleaded that at the time of issuing said order the court did not, and does not now, possess jurisdiction of the person or subject-matter, for the reason that no legal service was ever had upon the defendant, for the reason that the alleged service of the restraining order was made upon the defendant outside of the state of Missouri, and that at the time the money and property sought to be restrained was beyond the limits of the jurisdiction of the state; second, that the restraining order was beyond the power and authority of the court to issue on the bill of complaint; third, because, on the face of the bill of complaint, it appears that any money in defendant's hands was paid over to him by the bankrupt prior to the filing of the petition in bankruptcy, and was paid over to him under a claim of right thereto, and because it appears that he is an adverse claimant to the fund in question. The return then alleges that the sum of $2,800 sought to be reached by the bill was turned over to him by the bankrupt long prior to the filing of the petition in bankruptcy, under the following conditions, to wit: That the sum of $1,724 thereof was money in the hands of W. E. Cannon & Co., held by them in trust for the use and benefit of the defendant, and the balance thereof was received by him in payment of wages due from said company to him for his services as a traveling salesman, and that he received it in good faith. A general allegation is made in the return that the complainants are seeking by this proceeding to abuse the process of the court in attempting to use the same for the purpose of collecting a civil debt. The informants have filed exceptions to this return.

The objection that service of notice of the restraining order was had upon the defendant at Leavenworth, in the state of Kansas, cannot avail the defendant. It is a well-settled rule in equity that, "to render a person amenable to an injunction, it is neither necessary that he should have been a party to the suit in which the injunction was issued, nor to have been actually served with a copy of it, so long as he appears to have had actual notice thereof." Ex parte Lennon, 166 U. S. 549, loc. cit. 554, 17 Sup. Ct. 658, 660 (41 L. Ed. 1110); Ulman et al. v. Ritter (C. C.) 72 Fed. 1000; Ritter v. Ulman et al., 78 Fed. 222, 224, 24 C. C. A. 71; Sharpe et al. v. Harding et al., 65 Mo. App. 28, 30; In re Coggshall, 100 Mo. App. 585, 75 S. W. 183; Amer. & Eng. Enc. of Pleading & Practice, vol. 10, p. 1101. In short, the authorities are agreed that the temporary restraining order becomes operative upon the defendant from the time of his having notice of its issuance, regardless of the time of the formal service of notice upon him.

The only remaining matter of defense set up in the return worthy to be considered is that the restraining order should not have been made, for the reason that the defendant is claiming a right to the fund as having been paid to him by the bankrupt as a creditor. And therefore, in contemplation of the bankrupt act, such creditor, in the bankrupt proceeding, is not subject to summary process, as in case of a bankrupt, to an order to turn money over to the trustees. Reliance for this position is placed upon the ruling of the Circuit Court of

Appeals for the Second Circuit in Re Andre, 135 Fed. 736, 68 C. C. A. 374. The substantive effect of that ruling is that under the bankrupt act as amended in 1903, neither the referee in bankruptcy nor the bankrupt court can interfere by a summary order to compel a third party, who is, in fact, an adverse claimant, directing him to turn the property in his hands over to the trustee; that the law remains under the amendments to the bankrupt act conferring jurisdiction on the United States District Courts, without the consent of the defendant, to institute the action against him to recover funds in his hands, held by him in fraud or contravention of the bankrupt law, as theretofore, and that such summary proceeding can only be taken against the bankrupt who holds in his hand a fund in trust for the benefit of the estate; that the court of bankruptcy, under the statute, has jurisdiction only to entertain a proceeding to ascertain whether the third party is in fact an adverse claimant, or whether he holds the property merely as a naked bailee of the bankrupt. But that is not this case. The bill of complaint here was filed by the trustees in bankruptcy against the defendant with a view of reaching the fund in his hands, which he is alleged to hold in trust for the benefit of the estate, as a fraudulent transferee or as a preferred creditor of the estate; and as such said fund is recoverable at the suit of the trustees jurisdiction on the equity side of the District Court was invoked on the ground that the defendant being in possession of the specific fund which of right belonged to the estate, and which he would dispose of if not restrained therefrom, and being insolvent, an injunction against him was prayed to maintain the status quo as to this trust fund in his hands.

It may be conceded to the contention of defendant's counsel that, if the court had no jurisdiction over the subject-matter, its restraining order would be but a brutum fulmen, which the defendant was under no legal obligation to respect. What is jurisdiction in this respect? In Rhode Island v. Massachusetts, 12 Pet. 657, loc. cit. 718 (9 L. Ed. 1233), the Supreme Court thus defined it:

"'Jurisdiction' is the power to hear and determine the subject-matter in controversy between parties to a suit, to adjudicate or exercise any judicial power over them. The question is whether on the case before a court their action is judicial or extrajudicial; with or without the authority of law to render a judgment or decree upon the rights of the litigant parties. If the law confers the power to render a judgment or decree, then the court has jurisdiction. What shall be adjudged or decreed between the parties, and with which is the right of the case, is judicial action, by hearing and determining it."

In other words, jurisdiction is the power to hear and determine a cause. The authority by which judicial officers take cognizance of and decide causes. Courts of bankruptcy, in the administration of bankrupt estates, are invested with the exercise of equitable jurisdiction, and by the bankrupt act as now amended jurisdiction is expressly conferred upon the bankrupt court over suits between trustees in bankruptcy and third parties to recover from them property or funds held by them in fraud of the bankrupt act, or as preferred creditors. Bankr. Act July 1, 1898, c. 541, § 67, subsec. "e"; section 70, subsec. "e," as amended Act Feb. 5, 1903, c. 487, § 16, 32 Stat. 800 [U. S. Comp. St. Supp. 1905, p. 690].

It is the well-established rule in procedure for contempt for a disobedience of an injunction order that the defendant, when cited to appear, cannot purge himself of the contempt by going into the merits of the case to determine whether or not the discretion of the court was properly exercised in granting a temporary restraining order, or whether or not on final hearing the injunction should be dissolved. It is his duty to observe and obey the order implicitly as long as it stands unrevoked; and if he is of opinion, or has been advised by his counsel, that the order was improvidently issued, it is his duty to apply to the court for a modification or construction of its provisions, as it would lead not only to confusion and uncertainty, but would be destructive of the very purpose of a temporary restraining order if the party against whom the injunction had been issued should be allowed to judge of the propriety or the necessity of the relief sought. Rodgers v. Pitt et al. (C. C.) 89 Fed. 424, 428, 429; 1 Beach on Injunctions, par. 250; 2 High on Injunctions, § 1427. In State ex rel. Carroll v. Campbell et al., 25 Mo. App., loc. cit. 639, Lewis, P. J., said:

"The return avers that, on the face of the record, it appears that the case is not one in which an injunction should ever have issued, and that the relator was never entitled to an injunction on the facts stated. If this proposition were true, it would be wholly irrelevant and immaterial to the matter in hand. That an injunction was, in fact, granted by a competent authority, held to be such under the laws of this state, is sufficient to render the defendants liable as for a contempt, if they have willfully disobeyed it, as the information charges."

The rule is thus expressed in 10 Amer. & Eng. Enc. of Pleading & Practice, p. 1105:

"It is well settled, and the books are full of cases holding, that a defendant who has disobeyed an injunction cannot justify his disobedience by showing that the injunction was improvidently or erroneously granted or irregularly served; and that if the injunction has been improperly allowed the only remedy is by a motion to vacate or dissolve it."

In United States v. Agler (C. C.) 62 Fed. 824, Baker, J., said:

"There is not an authority, in the judgment of the court, that can be found in the books, certainly the court is aware of none, in which it has ever been held that a man who was enjoined and had violated the injunction could escape punishment by alleging that, at the time the writ of injunction was issued, the bill was demurrable."

In Clark v. Burke, 163 Ill. 334, 45 N. E. 235, it was held that in an attachment for contempt in failing to obey an order of the court the respondent may question the order which he is charged with refusing to obey only in so far as he can show it to be absolutely void for want of jurisdiction either of the party, the subject-matter, or the authority to pronounce the particular judgment. See, also, Kerfoot v. People, 51 Ill. App. 410; Tolman v. Jones, 114 Ill. 147, 28 N. E. 464; Billard v. Erhart, 35 Kan. 616, 12 Pac. 42; William Rogers Mfg. Co. v. Rogers, 38 Conn. 121; Woodward v. Lincoln, 3 Swanst. 626; Netherwood v. Wilkinson, 33 Eng. L. & Eq. 297; People v. Bergen, 53 N. Y. 405; Kaehler v. Halpin, 59 Wis. 40, 17 N. W. 868; Moat v. Holbein, 2 Edw. Ch. (N. Y.) 188.

It results that the special matters pleaded in the return to the citation for contempt are insufficient; and the court will hear the proofs under the general issue.

Note. After the foregoing decision, the defendant adjusted the matter to complainants' satisfaction, and further proceeding was abandoned.

