GARRETT et al. v. T. H. GARRETT & CO.

(Circuit Court of Appeals, Sixth Circuit. December 8, 1896.)

No. 458.

1. TRADE-MARKS—IMITATION OF LABELS—INJUNCTION.
   The use by a manufacturer of imitative labels and devices, in connection with an inferior article, which is sold to retailers at a reduced price, with the purpose and result of enabling them to sell it to consumers as the goods of another, will be enjoined.

2. SAME—USE OF NAME.
   Where a firm has for many years used the name of its predecessors in connection with its goods, and has built up an extensive trade thereunder, such name, even if it could not be used as a trade-mark, is to be treated as a descriptive term, to the benefit of which they are entitled.

3. SAME—IMITATIVE LABELS—WHITE PAPER.
   While it is true, in the abstract, that every one has a right to use white paper, yet no one has a right to use it in such a way as to imitate another's labels, and thereby appropriate the good will of his business.

**4. SAME---USE OF CORPORATE NAME.**
Where a corporation organized to manufacture and sell snuff had assumed the name of an employé holding a few shares of its stock, with the evident purpose of appropriating the trade of others of the same name, who had long used the name in connection with their snuff, *held*, that such corporation would be enjoined from using the name as part of its corporate name, or in its business.

Appeal from the Circuit Court of the United States for the District of Kentucky.

This was a suit in equity by George B. Wilson, Henry D. Moore, and John O. Gilmore, partners doing business under the firm name of W. E. Garrett & Sons, against T. H. Garrett & Co., a corporation, to restrain the alleged wrongful use of a trade name or mark and of imitative labels. The cause was heard below upon a motion for preliminary injunction, and, the court having granted an injunction in respect to the labels, but refused it in respect to the name, the complainants have appealed.

Upton W. Muir, for appellants.

Augustus E. Wilson and Shackelford Miller, for appellee.

Before TAFT and LURTON, Circuit Judges, and SAGE, District Judge.

SAGE, District Judge. The appellants are manufacturers of snuff known to the trade as "Garrett's Snuff," and were complainants in a suit brought in the United States circuit court for the district of Kentucky to restrain the appellee from using certain labels upon cans and packages of snuff, and from using the name "Garrett" on such packages and cans, and from representing the same as "Garrett's Snuff." The case came before the court upon a motion by complainants for a preliminary injunction against the defendant, according to the prayer of the original and amended bills. The motion came on to be heard upon said bills, upon exhibits of cans and packages and labels used by the defendant in preparing and putting on sale its product and manufacture, and upon affidavits in support of the averments of the bills. The defendant resisted the motion upon its answer, and upon affidavits and exhibits.

The defendant company was incorporated February 23, 1895, with the capital stock of $2,000, in 20 shares, of the par value of $100 each, of which 5 shares were subscribed by each of the four incorporators, of whom T. H. Garrett was one. On the 12th of December, 1895, the articles of incorporation were amended by increasing the capital stock to $35,000, divided into 350 shares, each of the par value of $100. T. H. Garrett subscribed for $2\frac{1}{2}$ shares. There were several other subscribers each for a small number of shares. J. B. Holloway was a subscriber for $127\frac{1}{2}$ shares, Henry Laub for 5 shares, E. R. Burley for 50 shares, and Hannah Laub for $121\frac{1}{2}$ shares. T. H. Garrett, in his affidavit, states that the means for the increase of the capital stock to $35,000 were furnished by Holloway, Lamb, and Burley.

The court granted the motion in part, upon the finding that the labels and devices used by the defendant company prior to its re-

organization, exhibits of which were filed with complainants' bill; so resembled the labels and devices used by complainants as to be likely to deceive and mislead an ordinary and unsuspecting customer. The defendant company was therefore enjoined to that extent, although it appeared, as the court recognized, that it had ceased the use of the labels and devices referred to before the filing of the bill, and had endeavored to recall all the snuff which had been theretofore put upon the market, which, however, was claimed to be only a few hundred dollars worth. The court in its opinion said:

"The principal question on this motion is whether the complainants, as manufacturers of Scotch snuff, are entitled to the exclusive use of the word 'Garrett' on labels and other devices for advertising their Scotch snuff. This is so important and so doubtful a question that the court is unwilling to decide it upon mere affidavits, and upon a motion for a preliminary injunction."

Complainants appeal from this ruling.

The labels and devices used by the defendant company under its original organization were, in their general design and appearance, close imitations of complainants' labels and designs. The cans, packages, labels, and wrappers of complainants were almost literally copied by the defendant company, excepting that "T. H. Garrett, Louisville, Ky.," was substituted for "W. E. Garrett, Philadelphia." The color of defendant's labels was the same as that of complainants'. The type used for the printed matter on the labels was similar in general appearance, arrangement, and general effect. That there was any intent to appropriate the good will or to deceive complainants' customers is stoutly denied by T. H. Garrett, and by the officers of the defendant corporation, and it is declared in their affidavits that the retail dealers, who were customers of, and those who were solicited by, the defendant company, were advised that the snuff was the manufacture of T. H. Garrett & Co. and not the manufacture of William E. Garrett & Sons. Whether retail dealers were advised that they could sell the snuff as "Garrett's Snuff" to their customers as and for the snuff manufactured and sold by complainants, and whether it was intended that those customers should be thus deceived is in dispute. Affidavits for complainants sustain the charge, and affidavits for the defendant deny it. But that the effect was to impose snuff manufactured by the defendants upon purchasers from retailers as "Garrett's Snuff,"—that is to say, as snuff manufactured by complainants,—is, we think, too well established to be doubted; and we are fully impressed that it was the intention of the defendant company, by the use of the name "Garrett," to appropriate the good will and interfere with the trade of the complainants.

It is denied by the defendant company that the change of labels, which was made about the time of the reorganization, was because of any apprehension of trouble with complainants, or of any feeling on the part of the officers of the company that there was the least infringement of the rights of the complainants. The defendant's version, as gathered from the affidavits of Garrett and Laub, the president of the reorganized company, and of Holloway,

one of the largest stockholders, is that the snuff sent out under the original labels was of inferior quality, that they were satisfied that it "would injure the business," that they "had heard that it was not good," and that the change in labels and devices was made, "not because of the resemblance to those of complainants, but because affiants and their associates were dissatisfied with the quality of the snuff."

T. H. Garrett, in his affidavit, says that, when the company was reorganized, Holloway brought up the question whether their brands and labels could not be mistaken for those of complainants or others, and that counsel were consulted on the subject, and that they advised certain changes, "out of abundant caution," which were made. He affirms that these measures were taken "to prevent confusion in the labels before there was any intimation of any dissatisfaction, or complaint on the part of complainants or anybody else." He also refers to and quotes from a circular put out by defendant company, December 31, 1895, in which the hope is expressed "that no one who tries our snuff will take it for theirs; that we should hate to have any one who has used our snuff, use theirs afterwards, under the impression that it was ours, because it would hurt his opinion of our goods; and that we trust that everybody who tries our snuff will notice and remember that it is made by us, and not by them." If all this be true, why did defendant company, upon reorganization, cling to the name "T. H. Garrett & Co."? If that name had been attached to goods of inferior quality, why, in the reorganization, was it not dropped, and another substituted which would have relieved the company from the odium resulting, as they now claim, from the inferior quality of the snuff sold under that name? T. H. Garrett was the owner of only $2\frac{1}{2}$ shares of the capital stock, the entire number of shares being 350. He was not made an officer of the new company, and had only a subordinate position as an employé. There was no apparent reason why his name should be adopted as the corporate name, unless it was that "Garrett's Snuff" had a reputation, and was in demand by the users of snuff all over the South,—the territory sought to be occupied by the defendant company.

The statement, made by Holloway in his affidavit, that the only reason for retaining the name of T. H. Garrett in the name of the corporation was that he was its original projector and promoter, and that it would have been an unnecessary and unfair reflection on him to have changed the name, is mere pretense and sham, too bald to be even plausible. If it be said that it was to preserve the good will of the company as first organized, the answer is that by Garrett's own affidavit it is shown that, by reason of the poor quality of the snuff put on the market by that company, its good will, if it ever had any, was all turned to ill will. Taking his own showing, it is apparent that the best thing for the company to do, if it was actuated by any honest purpose, would have been to get rid of the name as quickly as possible. The sending out of circulars and advertising matter, which might be suggested as another reason, was, almost exclusively, after the reorganization.

If the defendant company was and is, as it claims, solicitous to avoid confusion of labels, and desirous to build up a good will of its own, which it would be able to protect against the complainants as well as all others, it ought to hail with satisfaction anything that the court below could have done, or that this court can do for it, in that behalf.

It is quite significant, with reference to the denials of intent to imitate complainants' labels or devices which are made by all the defendant's affiants who have anything to say on that subject, that the imitations were invariably of complainants' labels and devices, and never of any one of the several other manufacturers whose names are mentioned. It is not to be credited that the imitations were unintentional or accidental. It is not claimed that the packages of snuff on which they were placed were put on the market with the intent to deceive the retail dealers who were supplied by defendant. That would have been impracticable. The claim is that the snuff was of inferior quality, and sold at prices below complainants' prices, with the expectation that the retail dealers, who knew what they were buying, would sell it to their customers as "Garrett's Snuff," and at the price of the genuine article, thereby reaping a larger profit. That was the lure, and it was of the sort to be successful in the great majority of instances. As for the purchasers from the retailers, they were mostly "snuff rubbers,"—that is to say, those who use snuff for "rubbing," as it is termed, which is a substitute for chewing,—and, being generally of the lower classes, they would not be likely to discover that they were cheated by fraudulent labels and an inferior article. But the injury to complainants was and is twofold, for they not only lose trade, but reputation, or good will, also.

It is noticeable, also, that T. H. Garrett completely impeaches his own testimony by his own affidavit in two very important particulars. He affirms that he had for several years given great attention to the subject of the manufacture of snuff, and that he was experienced in that manufacture. In another part of the same affidavit he affirms that the snuff manufactured before the defendant company was organized—and that was when the manufacture was under his supervision—was so inferior in quality that the defendant took back and withdrew from sale every package that could be found or got hold of anywhere, being not less than one-half the total amount that had been sold. Then, again, he affirms that the change of labels and devices by defendant, before this suit was brought, was made, not because of their resemblance to those of the complainants, but because affiant and his associates were dissatisfied with the quality of the snuff. In another part of the affidavit he affirms that the question with reference to the changing of the brands and labels was whether they could be mistaken for those of complainants, or those of any of the several manufacturers named; and counsel were consulted, and changes made on their suggestion. Such conflicts of statement are not badges of truth or sincerity.

Without entering further into detail, it is enough to say that we are convinced, by the admitted facts and the facts appearing in the affidavits offered on behalf of the defendant, that the charge, made in the bill, of an attempt to take advantage of the complainants and interfere with the good will of their business by the use of the name "Garrett," is abundantly sustained. The district judge in effect decided that defendant was trespassing on complainants' good will, by directing that the injunction which he allowed should issue. That injunction, however, fell far short of affording substantial relief or protection to complainants. It related only to labels and devices which he found had been abandoned by the defendant. The only additional feature covered by the injunction was the ground color of defendant's labels. The defendant was enjoined from using either a white color or a murky white color. But these were matters of detail, and of minor importance, as compared with the use of the name "Garrett." Without the use of that name the fraudulent scheme of the defendant would never have materialized. The court, while recognizing that the defendant was guilty of the fraud charged, declined to make the injunction effectual against it, and applied it only to what was really a matter incidental to the use of the name. The rule of this court not to disturb the action of the court below, unless the discretion of the judge was improvidently exercised, was recognized by the circuit court of appeals of this circuit in Duplex Printing-Press Co. v. Campbell Printing-Press & Manuf'g Co., 16 C. C. A. 220, 69 Fed. 252. The granting and withholding of a preliminary injunction is largely within the discretion of the judge who passes upon the application for it, and there are many considerations which may be even controlling without reference to the merits of the question at issue. But here the judge gave specifically his reason, which related, not to a matter of mere discretion, but directly to the merits of the question involved, which was whether the complainants were entitled to the exclusive use of the word "Garrett" on the labels and other devices for advertising their Scotch snuff. This, he held, was so important and so doubtful a question as not to be decided upon mere affidavits, and upon a motion for a preliminary injunction. That the complainants were entitled to the use of the word "Garrett," on their labels, as a trade-mark or as a descriptive word, is, in our opinion, beyond question, upon the undisputed facts of the case. They and their predecessors had enjoyed such use for many years and had built up an extensive trade based upon it. Even if it could not be used as a trade-mark, it is to be treated as a descriptive term, to the benefit of which they are entitled. It was so held by the court of appeals of this circuit in California Fig Syrup Co. v. Frederick Stearns & Co., 20 C. C. A. 22, 73 Fed. 812, and in Salt Co. v. Burnap, also decided by the court of appeals of the Sixth circuit, and reported 20 C. C. A. 27, 73 Fed. 818.

It was contended for the defendant, upon the hearing, that every man has a right to the use of his own name in business, and, as to the order of injunction below restraining defendant from using

white paper for its labels, that every person has a constitutional right to use white paper. These propositions, in the abstract, are undeniably true, but counsel for the time overlooked the fact that, wherever there is an organic law, wherever a constitution is to be found as the basis of the rights of the people, and as the foundation and limit of the legislation and jurisprudence of a government, there the mutual rights of individuals are held in highest regard, and are most jealously protected. Always, in law, a greater right is closely related to a greater obligation. While it is true that every man has a right to use his own name in his own business, it is also true that he has no right to use it for the purpose of stealing the good will of his neighbor's business, nor to commit a fraud upon his neighbor, nor a trespass upon his neighbor's rights or property; and, while it is true that every man has a right to use white paper, it is also true that he has no right to use it for making counterfeit money, nor to commit a forgery. It might as well be set up, in defense of a highwayman, that, because the constitution secures to every man the right to bear arms, he had a constitutional right to rob his victim at the muzzle of a rifle or revolver. It has been held, with reference to trade-marks, that a man has not the right to use even his own name so as to deceive the public, and make them believe that he is selling the goods of another of the same name. Holloway v. Holloway, 13 Beav. 209. In William Rogers Manuf'g Co. v. Rogers & Spurr Manuf'g Co., 11 Fed. 495, it was held that, while "any one has a right to the use of his own name in business, he may be restrained from its use if he uses it in such a way as to appropriate the good will of a business already established by others of that name; nor can he, by the use of his own name, appropriate the reputation of another by fraud, either actual or constructive." The same ruling was made in Rogers Co. v. Wm. Rogers Manuf'g Co., by the court of appeals of the Second circuit, as reported in 17 C. C. A. 576, 70 Fed. 1017. In these last two cases the name was used as a part of the name of a corporation. In the last case the court cites Manufacturing Co. v. Simpson, 54 Conn. 527, 9 Atl. 395, and Rogers v. Rogers, 53 Conn. 121, 1 Atl. 807, and 5 Atl. 675, where a large number of reported cases upon this portion of the law of trade-marks is collected. See, also, Landreth v. Landreth, 22 Fed. 41, where the court held that, "while a party cannot be enjoined from honestly using his own name in advertising his goods and putting them on the market, where another person, bearing the same surname, has previously used the name in connection with his goods in such manner and for such length of time as to make it a guaranty that the goods bearing the name emanate from him, he will be protected against the use of that name, even by a person bearing the same name, in such form as to constitute a false representation of the origin of the goods, and thereby inducing purchasers to believe that they are purchasing the goods of such other person."

It is to be noted that, in Landreth v. Landreth, and in Holloway v. Holloway, the defendant was restrained from the fraudulent use

of the name by a preliminary injunction, and it will appear, upon investigation, that in a large number of cases upon this subject a preliminary injunction was allowed. In such a case as this, where the manifest intent was and is to appropriate the good will of the complainants by the fraudulent use of the name "Garrett," if the complainants be not protected by preliminary injunction against such use,—if, in other words, that question be postponed to the final hearing,—there is every inducement to the defendant to delay and prolong the litigation, continuing, meanwhile, the assaults upon the good will of the complainants, so that, even if final decree be at last rendered in favor of complainants, the good will will have been so seriously and irreparably injured, if not in great measure destroyed, as to leave the complainants practically without remedy. It is, therefore, peculiarly a case in which, if the court is satisfied that the use of the name is fraudulent, as this court is satisfied in this case, an injunction should at once be issued.

Entertaining these views the order of the judge below for an injunction as to the use of the labels will be affirmed, and the order refusing an injunction against the use of the name of "T. H. Garrett," or "T. H. Garrett & Co.," will be reversed, with costs. The cause will be remanded, with instructions to continue the injunction granted, and to grant an injunction, in accordance with this opinion, against the use of the name of the defendant "T. H. Garrett," or of the name "Garrett," as a part of the corporate name of the defendant, or in its business.