## PROCTOR & GAMBLE CO. v. GLOBE REFINING CO.

(Circuit Court of Appeals, Sixth Circuit.    March 7, 1899.)

No. 598.

1. UNFAIR COMPETITION—PRELIMINARY INJUNCTION—REVIEW.

To justify an appellate court in reversing an order refusing a preliminary injunction against alleged unfair trade, it must be clearly apparent that the discretion of the trial court has been improvidently exercised.

2. SAME—WHAT CONSTITUTES.

The cardinal rule upon the subject of unfair competition in trade is that no one shall, by imitation or any unfair device, induce the public to believe that the goods he offers for sale are the goods of another, and thereby appropriate to himself the value of the reputation which the other has acquired for his own products or merchandise.[1]

---

[1] As to unfair competition, see note to Scheuer v. Muller, 20 C. C. A. 165, and supplementary note to Lare v. Harper, 30 C. C. A. 376.

3. SAME—LABELS—WORDS OR MARKS USED TO INDICATE SUPERIORITY OR POPULARITY.

One cannot make an exclusive appropriation of words or marks which he puts upon his goods, and which simply indicate their superiority or popularity, or universality in use, and no more.

4. SAME—IMITATION OF WRAPPER—DESIGNS COMPARED.

Complainant manufactured soap, which it sold in packages having a yellow wrapper, on one side of which was printed in black letters the words "Every Day Soap," together with the name and location of the maker. There was also a small, circular figure containing a representation of a moon and stars on a black ground. Defendant put up its soap in packages of similar size and shape, having a yellow wrapper, on one face of which was a black ground containing only the words "Everybody's Soap," in letters formed by the yellow paper of the wrapper showing through the black field of the label. The print and figures displayed on the sides and back of the wrapper bore no resemblance to anything on complainant's, and the name and location of the maker were conspicuously shown on one side of the package. *Held*, that an order refusing complainant a preliminary injunction would not be disturbed.

Appeal from the Circuit Court of the United States for the District of Kentucky.

On the 8th day of November, 1897, the Proctor & Gamble Company (the appellant here) filed its bill in the circuit court for the district of Kentucky against the Globe Refining Company, complaining that the latter was infringing a trade-mark belonging to the complainant, impressed upon a wrapper or label used for covering cakes of washing soap alleged to be known to the trade as "Every Day Soap," by using on soap manufactured by the defendant a wrapper or label containing the words "Everybody's Soap." Certain other features wherein defendant's label was charged to be an imitation of the complainant's were stated in the bill. To this bill the defendant filed an answer, and on November 11, 1897, the complainant moved for a preliminary injunction, and the motion was heard on the bill and answer and affidavits filed by the respective parties, and some further evidence taken in open court, which latter was preserved, and is found in the record. On the 4th day of December following, the court granted a temporary injunction, as prayed for. One week thereafter, December 11, 1897, the complainant filed an amended and supplemental bill, further alleging the use by the defendant of another label which had been substituted for the first, and complaining of the new label as being an infringement of the complainant's trademark, and, independently of that, of its employment by the defendant as involving unfair competition in trade, in that it was devised and used for the purpose of inducing purchasers thereof to believe that in buying the soap of the defendant, so labeled, they were buying the complainant's soap. The defendant on December 27, 1897, filed its answer to the supplemental bill. Thereupon the complainant made a further motion for a preliminary injunction against the new label. This motion was heard on the pleadings, affidavits and testimony taken in open court as above stated. It was held by the court that the new label was not an infringement of the label of the complainant, and that the use of it was not unfair competition in trade, and complainant's motion for an injunction was accordingly overruled. From this order the complainant appeals. There was no appeal from the order allowing the injunction on the original bill, and the order denying the injunction against the use of the second label is the only matter for review.

Humphrey & Davie, for appellant.
Richards, Baskin & Ronald, for appellee.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

SEVERENS, District Judge, having stated the case as above, delivered the opinion of the court.

Upon this appeal the appellant relies not so much upon the infringement of its trade-mark as upon its complaint that the use by the defendant of its label is an unfair competition in trade. To the question whether it is so or not, the briefs and arguments of counsel are mainly directed. This being an appeal from an order denying a preliminary injunction, the question to be determined is whether the discretion of the court below was improvidently exercised and not whether, upon the final hearing, upon full view of all the facts in the case, this court would, upon the evidence before it, reach the same conclusion as that of the court below. Duplex Printing-Press Co. v. Campbell Printing-Press & Manufacturing Co., 16 C. C. A. 220, 69 Fed. 252; Garrett v. T. H. Garrett & Co., 24 C. C. A. 173, 78 Fed. 472. To justify this court in reversing an order of this kind, is must be quite clearly apparent that a mistake was committed by the court below. Ritter v. Ulman, 42 U. S. App. 263, 24 C. C. A. 71, and 78 Fed. 222.

By the test applicable to such an appeal, we proceed to consider what appear to us to be the material facts of the controversy, so far as they can be ascertained from the record of the proceedings before the circuit court. This involves principally a comparison of the labels of the respective parties involved in the second application for an injunction, but incidentally it will be proper to give some attention to the label used by the defendant before the injunction was granted upon the original motion; it being insisted by the appellant that, by reason of the defendant's having diverted in part the trade of the complainant by the use of its first label, the use of the second label, which it is charged is only a colorable variation of the first, enables the defendant more effectually to absorb the complainant's business. The packages in which the respective parties put up their soap for the market are similar in form and size, being about 4 inches long, $2\frac{3}{4}$ inches wide and $1\frac{1}{2}$ inches thick. The label of the complainant, printed upon the wrapper on the upper flat surface of the cakes, consisted in large part of the words "Every Day Soap"; the first two words being in large, fancy letters, in a curved line in the upper part of a rectangular space about the size of the cake, and the word "Soap," also in large, fancy letters, under the former words. In the lower left-hand corner is a circular figure about three-fourths of an inch in diameter, in the resemblance of a full moon bearing a human face within it looking to the left; the rest of the contents of the circle being a black field, with 13 white stars thereon. At the right of this, and extending across three-quarters of the length of the label, are the words "Proctor & Gamble," and under these the word "Cincinnati," all in good-sized letters. There is some additional matter of ornamentation. All the foregoing characters were stamped or printed upon the face of light-yellow paper. Upon one edge of the cake, or rather upon the wrapper where it covers the side of the cake, there were printed the words, "Manufactured at Ivorydale," "Factories conducted on the profit-

sharing plan," in two lines on a rectangular space about three inches long and half an inch wide, of the same light-yellow color.    The rest of the complainant's wrapper is of a darker color, filled with an obscure, uniform ornamentation.    The first of the defendant's labels (being the one the use of which was enjoined) was of the same color as the complainant's, and bore upon its face, in large letters, the words "Everybody's Soap"; the letters being in about the same style as the complainant's, and formed in a very similar manner. There was a circular figure of the same size in the lower left-hand corner, but filled with different characters.    At the right hand of this, where the complainant printed the words "Proctor & Gamble," the defendant printed the words "Globe Refining Co."    Underneath this was "Louisville, Ky.," instead of "Cincinnati" in the complainant's label.    On the wrapper along both edges of the cake was printed other matter, having no resemblance to that of the complainant's.    This wrapper had been in use for a few weeks only when the original bill was filed, and was thereupon discontinued. The defendant had been previously engaged for a much longer time in the manufacture and sale of the same or similar soap.    The defendant's second label (the one now in question) was adopted, as the defendant claims, to obviate the objections which had been made to the use of the first.    The wrapper was of the same color as before..  The label on the upper surface of the cake was black, except where lettered.    It bore the words "Everybody's Soap"; the word "Everybody's" being in script; the letter "E" being a capital, and the rest in ordinary style, though all were of good size, and plainly readable at some distance.    The word "Soap" was in plain type, in smaller letters, and both were arranged in a similar relation to each other and to the surface of the label as the words "Every Day" and "Soap" in the complainant's label, except that the word "Everybody's" was straight, instead of circular, running from near the lower left-hand to the upper right-hand corners, and the word "Soap" filled the space in the lower right-hand corner.    The color of the letters was light yellow, and the letters appear to consist of the wrapper itself showing through the black field of the label surrounding them.    There was no circle in the lower left-hand corner, as in the complainant's label and the first of the defendant's, and there was no name of the manufacturers and their place of business, as in those.    There was scarcely any ornamentation, the whole being of plain style.    On one side of the cake upon the wrapper was printed in black letters the words, "Everybody's Soap," "made by" "Globe Refining Co., Louisville, Ky.," in three lines; and on the other, "Everybody's Soap," "Best, goes farthest," in two lines.    The rest of the wrapper was filled with pictures of a cavalcade, illustrating how all classes and peoples glorify "Everybody's Soap."

Having given this somewhat minute description of the labels which make the ground of the controversy, it remains to consider whether there was fair ground for the conclusion of the court below that a preliminary injunction should be denied.

The sharp competition in business of recent years has brought about a great increase in suits of this character, and the decisions

therein have rapidly multiplied. It would be a difficult task to harmonize them upon the principles which all of them recognize. This is because of such an infinite variety in the facts and circumstances with which the courts have had to deal,—a variety perhaps not surpassed in the field of any other department of judicial labor. The decisions, however, do undoubtedly help to sharpen the judgment, and often shed a line of light which leads one on to a just conclusion. Each case depends upon its own facts and circumstances, and must be decided upon the application thereto of settled principles which have received no substantial modification in recent years. The cardinal rule upon the subject is that no one shall, by imitation or any unfair device, induce the public to believe that the goods he offers for sale are the goods of another, and thereby appropriate to himself the value of the reputation which the other has acquired for his own products or merchandise. Canal Co. v. Clark, 13 Wall. 311; Coats v. Thread Co., 149 U. S. 562, 13 Sup. Ct. 966. The substance of the rule is well understood, and it is unnecessary to make extensive citation of cases which have recognized it. It sometimes happens that the labels or characteristic marks which manufacturers use upon their goods are catchwords designed to attract purchasers, and to inspire the belief that theirs excel all others in merit, or that in popular estimation they are of superior quality. It will not do to say that any one manufacturer may exclude all others from the use of labels or marks which, differing in terms and characteristics, are honestly designed and used to obtain the same advantages. In other words, one cannot make an exclusive appropriation of words or marks which he puts upon his goods, and which simply indicate their superiority or popularity, or universality in use, and no more. If he could, he might thus absorb a privilege which is common to all. Corbin v. Gould, 133 U. S. 308, 10 Sup. Ct. 312; Coats v. Thread Co., 149 U. S. 562, 13 Sup. Ct. 966; Lawrence Mfg. Co. v. Tennessee Mfg. Co., 138 U. S. 537, 11 Sup. Ct. 396. There is room for a question as to whether the labels of these parties are not of that class,—a question which we do not decide. The complainant charges, and there is proof tending to show the fact, that after the defendant adopted its first label the trade of the complainant at Louisville, which prior to that time had been very large, fell off in a great degree. The second label had been in use only a few days when the supplemental bill was filed, and there could not have been an opportunity to test its effect upon the trade. But the increase, if there was any, of the defendant's business, may have been the legitimate effect of its adoption of a "taking" description of its soap, which it was entitled to put upon its goods without trespassing upon the complainant's privilege of doing the same thing.

The complainant alleges, among other things, that it has for many years put up its soap in the form, size, and color of package in which it now does, and that from these peculiarities and its label the public have thereby become familiar with its goods; and it is further charged that the defendant imitates its package, in the form and size of it, as well as the color of the wrapper. But, if it were conceded that the complainant could acquire an exclusive privilege to the use of

such characteristics, it is not shown that their practice in respect to either the form or size of the cake or the color of the wrapper was peculiar to themselves, and non constat that other manufacturers, including the defendant, were accustomed to put up their goods in the same style in respect to these peculiarities. This part of the case stands on the same footing as did the black and gold labels on the ends of the spools whereon the plaintiff's trade-mark was printed in the case of Coats v. Thread Co., supra; such labels having become common property. Aside from these features, there are not many points of similarity. The principal one is the use in both labels of the word "Every" in the complainant's, and as a component part of the word "Everybody's" in the defendant's, upon the wrapper on the upper surface of the cake, which is the only place where it occurs on the complainant's package. But in this context it should be noted· that all the letters on this surface of the package are printed in black, upon a light-yellow ground, while on the defendant's the letters are light yellow on a black ground. In the complainant's the letters are in the similitude of type-written letters ornamented, while the defendant's are in script. On the defendant's label the figure of the moon and the characters exhibited therein by the complainant's is not shown, and the name of the manufacturer, which on the complainant's label is quite plainly shown, is not printed on the defendant's. The print and characters displayed on the sides and back of the defendant's wrapper bear no resemblance to anything on the complainant's. On one side of the complainant's the place of manufacture is stated to be Ivorydale. On the defendant's it is stated as at Louisville, Ky., and the name of the manufacturer, "Globe Refining Co.," is distinctly shown. Thus, on each wrapper the name of the respective manufacturers is conspicuously shown, and this is one of the important means of identification. P. Lorillard Co. v. Peper, 30 C. C. A. 496, 86 Fed. 956, 959. By the sight of the package, or by hearing the distinctive appellation read, customers would in general, if not universally, identify the goods they were buying. It is hardly conceivable that any one familiar with the appearance of the complainant's packages, who looked to the article he was purchasing to see whether it was the same, could fail to notice the difference, on the defendant's package being offered to him. The retail dealer would, beyond doubt, know the difference. Both seller and buyer would know that manufacturers generally put up their goods in the same shape and style, and the slightest inspection of the other characteristics would indicate the difference. If the consumer called for "Every Day" soap, and the retailer supplied him with "Everybody's" soap, it would be a fraud for which the defendant would not be liable, as was pertinently said by Mr. Justice Brown in Coats v. Thread Co., already cited. And in passing we observe that what is mainly relied on in the present case as the imitation so injurious to the complainant, namely, the use of the word "Every," is not more likely to produce confusion with purchasers than were the use of the words "Best Six Cord" on the black and gold labels of the parties in the case just referred to, where an injunction was denied. But it is said that the evidence shows that the defendant's officers studied how

closely they might approximate the complainant's label without exposing themselves to suit, and that this indicates a purpose to purloin the complainant's good will. The evidence does show that such consultations took place in reference to the first label, but it is also shown that on discontinuing that they took legal advice in regard to the making of a new one. If they were intending to devise a new label which might attract purchasers by an alluring advertisement, they might lawfully do this, if they made it in such a form and style as would not lead purchasers to think they were buying the complainant's goods. The evidence does not clearly show that there was bad faith in devising the new label. It is not inconsistent with an honest purpose. A feature of this kind existed in the well-reasoned case of Sterling Remedy Co. v. Eureka Chemical & Manufacturing Co., 70 Fed. 704,—a case cited by Judge Barr in his opinion, which is found in the record,—but it was not regarded as of controlling weight. In that case the controversy was over trade-marks employed on remedies for curing the habit of using tobacco. The prominent word on the complainant's label was "No-to-bac." That of the defendant's was "Baco-curo." It was insisted that the first word in the latter was so nearly idem sonans with the last word or syllable in the first, and that being the significant part of the expression, it was likely to attract trade which rightfully belonged to the complainant. But the court held otherwise, in view of the other differing features of the case. This judgment was affirmed by the circuit court of appeals for the Seventh circuit. Sterling Remedy Co. v. Eureka Chemical & Manufacturing Co., 25 C. C. A. 314, 80 Fed. 105.

Much reliance is placed upon the decision in the case of Garrett v. T. H. Garrett & Co., 24 C. C. A. 173, 78 Fed. 472, where this court reversed an order refusing a preliminary injunction. In that case the complainants had long been in the manufacture and sale of a snuff which bore the brand and was known to the trade as "Garrett's Snuff," and had a high reputation. The defendants organized a corporation with 350 shares, and took in one T. H. Garrett, with 2½ shares, in order to give color to the employing the word "Garrett" in their corporate name. The corporation thereupon engaged in the snuff business, and sold their product as "Garrett's Snuff." We quote from the opinion of the court, at page 474, 78 Fed., and page 174, 24 C. C. A.:

"The labels and devices used by the defendant company under its original organization were, in their general design and appearance, close imitations of complainants' labels and designs. The cans, packages, labels, and wrappers of complainants were almost literally copied by the defendant company, excepting that 'T. H. Garrett, Louisville, Ky.,' was substituted for 'W. E. Garrett, Philadelphia.' The color of defendant's labels was the same as that of complainants'. The type used for the printed matter on the labels was similar in general appearance, arrangement, and general effect."

From this it appears that the only material difference between the labels of the parties, or otherwise shown upon their packages, was in the initials of the word "Garrett," and the place of manufacture. In the present case, as we have shown, the points of resemblance are few, and the differences many, and the latter exist in

important features. It has been said that it is the resemblances that should be looked at, rather than the differences. But the existence of the latter negatives the former, and it is necessary to take both into view, in order to get a correct picture of the whole. Mr. Justice Brown said in delivering the opinion of the court in Coats v. Thread Co.:

"The differences are less conspicuous than the general resemblance between the two. At the same time, they are such as could not fail to impress themselves upon a person who examined them with a view to ascertain who was the real manufacturer of the thread."

And see the observations of Mr. Justice Lamar in Corbin v. Gould, 133 U. S., at pages 312, 313, 10 Sup. Ct. 312.

Upon the whole, we are satisfied that at least there was no "plain error" in the order of the circuit court, and it is accordingly affirmed.