## THOMAS G. PLANT CO. v. MAY CO.

(Circuit Court of Appeals, Sixth Circuit. December 4, 1900.)

### No. 832.

1. TRADE-NAMES—RIGHT TO PROTECTION—NAMES INCIDENTALLY DENOTING QUALITY.

Where the general purpose of a trade-name adopted by a manufacturer is to identify the origin or ownership of the articles to which it is attached, his right to protection in the exclusive use of such name is not affected by the fact that the words used also denote quality, and carry with them a claim of excellence incident to the goods of such origin or ownership.

2. SAME—UNFAIR COMPETITION—INJUNCTION.

The word "Queen," used by a manufacturer of ladies' shoes, to designate its product, is not essentially one which signifies quality, so as to preclude its appropriation as a trade-name; nor does the·addition of the word "Quality" to the name, after it has become identified with the goods of such manufacturer, which were thereafter known to the trade and by purchasers by both names, as "Queen" or "Queen Quality" shoes, materially affect the designation, or destroy its identity, so as to deprive the owner of the right to protection by injunction against the use by another of the word "Queen" as a name for similar shoes, where it appears that the sole purpose of the defendant in adopting it was to obtain the advantage of the reputation which complainant's goods had acquired under that name.[1]

Appeal from the Circuit Court of the United States for the Eastern Division of the Northern District of Ohio.

For opinion in circuit court, see 100 Fed. 72.

This is an appeal from an order refusing in part an application made by the appellant for a preliminary injunction restraining the appellee from infringing a trade-mark belonging to the appellant, and from certain other practices which were alleged to be unfair competition in trade. The motion was heard on the bill and answer and affidavits introduced by the respective parties. The appellant is a corporation organized under the laws of Massachusetts, and engaged in the business of manufacturing and selling ladies' shoes, having its principal place of business at Boston. The appellee is an Ohio corporation, carrying on a department store at Cleveland, one branch of its business being the sale of similar goods. In May, 1892, a corporation was organized at Boston under the laws of Massachusetts by the name of the Clark-Hutchinson Company, and engaged in the sale of ladies' shoes. It adopted as a trademark for this branch of its business the word "Queen," which was stamped upon its goods, and became the designation under which they were sold and known in the market. That company continued to be extensively engaged in the business of selling these shoes under this trade-mark from 1892 until November, 1898, when it sold out this entire branch of its business, together with

---

[1] Unfair competition in trade, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.

the good will pertaining thereto, as well as its trade-mark, to the appellant,. the Thomas G. Plant Company, already engaged in the shoe business in the same city. This last-named company thereupon proceeded to build up at great expense in advertising and otherwise a large business in that special line throughout the country. It added to the trade-mark of "Queen," which had been used by its predecessors in the business, the word "Quality," and the goods of this class which they sold were branded "Queen Quality," and in the market were known and designated as "Queen" or "Queen Quality" shoes indiscriminately as between these two names. The appellee, the May Company, procured to be made or purchased, and then sold at its place of business, a kind of ladies' shoes similar in appearance to those of the appellant, but at a less price, having, before offering them for sale, stamped them with the word "Queen," and with their own name and place of business, and advertised in the city press that the May Company's was the only store in Cleveland that was selling the Thomas G. Plant's three dollar "Queen Quality" shoes. Upon these and some minor facts appearing in the proof offered, the court made the following order: "This cause came on to be heard upon the motion of the complainant for a preliminary injunction and the affidavits offered by the parties, respectively, and was argued by counsel; and the court, being of the opinion that the words 'Queen' and 'Queen Quality,' as originally adopted and as now used by complainant in connection with ladies' shoes manufactured by it, is and was designed to designate the character, class, grade, and quality of said shoes, declines to enjoin the defendant from using the word 'Queen' as a brand or mark for ladies' shoes, providing it is used in a manner not tending or calculated to deceive or mislead the public. The court being of the opinion that the manner in which said word is now used by the defendant might have a tendency to mislead and deceive the public, it is ordered that a writ of injunction issue enjoining and restraining said defendant, its officers, agents, and servants, from employing or using the word 'Queen,' written in script, as a mark or brand upon ladies' shoes, or in any way connected with the sale or offering for sale thereof, whether upon any label, carton, advertisement, circular, card, or letter head; but this decree shall not be construed as applying to or prohibiting the use by defendant of said word 'Queen' when printed not in colorable imitation of or resemblance to the mark of complainant, or to the use of said word when written in script in the manner complained of in the bill of complaint, if, in connection with such use, the defendant plainly and conspicuously indicates that the shoes so labeled or marked are not the same as the 'Queen Quality' shoes manufactured by the Thomas G. Plant Company, and are not manufactured by said company." The plaintiff, complaining that the injunction is inadequate for the protection of its rights in that it fails to restrain the defendant from in any form or manner whatever making use of the word "Queen" as a name or designation for its shoes, so as to cause them to be known in the market and offered and sold as "Queen" shoes, appeals from the refusal of the court to extend its order so as to restrain the defendant from such conduct.

Frederick P. Fish, George H. Maxwell, Crosby & Gregory, and Hoyt, Dustin & Kelly (Rowland Cox, on the brief), for appellant.

Kline, Carr, Tolles & Goff and F. H. Goff, for appellee.

Before LURTON and SEVERENS, Circuit Judges, and EVANS, District Judge.

SEVERENS, Circuit Judge, having stated the case as above, delivered the opinion of the court.

Counsel for the appellant have first discussed the matter of this appeal in their briefs at some length upon the assumption that the appellant had a technical trade-mark in the designation "Queen Quality" or "Queen," but, as this is not alleged in the bill, and appears only incidentally in the proofs, we shall not deal with the

case on that footing. The substantial merits of the case are involved in the question whether the appellant was entitled to an injunction to restrain the defendant from pursuing its course of dealing in the use of the name "Queen" as a designation of its goods, upon the ground that it leads to the deception of the public, and the unlawful appropriation of the appellant's business reputation. The court below, as indicated by its order, based its action upon the opinion that the use by the appellant of the designation of "Queen" or "Queen Quality" as a brand or name for its shoes was merely to designate "the character, class, grade, and quality" of the shoes, and not to indicate the ownership or origin of manufacture; and this view pervades the substance of the order. It is not necessary to discuss the question whether, upon that assumption, the injunction, as awarded, rests upon any sufficient ground. We are of opinion that the court erred in its conclusion that the designation of its shoes by the appellant was merely or primarily for the purpose of denoting their grade or quality. The court refers in its opinion, which is sent up with the transcript and published in 100 Fed. 72, to the case of Mill Co. v. Alcorn, 150 U. S. 460, 14 Sup. Ct. 151, 37 L. Ed. 1144, wherein it is said:

"To acquire a right to the exclusive use of a name, device, or symbol as a trade-mark, it must appear that it was adopted for the purpose of identifying the origin or ownership of the articles to which it is attached, or that such trade-mark points distinctly to the origin, manufacture, or ownership of the article on which it is stamped; and is designed to indicate the owner or producer of the commodity, and to distinguish it from like articles manufactured by others. If a device, mark, or symbol is adopted or placed upon an article for the purpose of identifying its class, grade, style, or quality, or for any purpose other than a reference to or indication of its ownership, it cannot be sustained as a valid trade-mark."

Undoubtedly this is a correct statement of the law, though the case itself determined nothing pertinent here, the question there being one involving the exclusive right to use a geographical name. The last sentence in the above quotation, in speaking of the purpose of identification, etc., refers to the primary purpose, and it is not to be inferred that the learned justice meant to say that if incidentally the symbol had the effect to denote quality, the general purpose being to denote origin or ownership, and the quality being incident to the goods of such ownership, the right to the use of that symbol could not be sustained; for it is manifest that, if the good will which goes with the trade-name has any foundation in merit, it must necessarily imply a quality in the goods. Indeed, it would seem that the mere fact that the word chosen carries with it a claim of excellence cannot invalidate the choice. The law upon the subject is, as Mr. Justice Jackson said in that case, and has been since many times repeated, well settled, and the questions of difficulty concern the facts. The use of the trade-mark or trade-name of another, although generally the most important of the means resorted to for the purpose of appropriating the benefits of his good reputation, is but one of such means, and the rule of conduct is leveled at them all. The following statement of the general prin-

*ciple was approved by this court in the case of American Wash-board Co. v. Saginaw Mfg. Co., 43 C. C. A. 233, 103 Fed. 281:*

"The circumstances vary greatly, but the underlying principle which is effective in the solution of such cases is that a party may not adopt a mark or symbol which has been employed by another manufacturer, and by long use and employment on the part of that other has come to be recognized by the public as denoting the origin of the manufacture, and thus impose upon the public by inducing them to believe that the goods which this new party thus offers are the goods of the original party. In other words, it is a fundamental principle that a man cannot make use of a reputation which another manufacturer has acquired in a trade-mark or trade-name, and, by inducing the public to act upon a misapprehension as to the source of the origin, deprive the other party of the good will and reputation which he has acquired, and to which he is entitled."

It is insisted in behalf of the appellee that the designation "Queen" is essentially one which signifies quality, and cannot, therefore, be appropriated by one individual as a trade-name to the exclusion of others who have an equal right to use terms which denote a superior value or quality in their goods. But the decisive weight of authority supports the right of an individual to adopt a specific name of this character to distinguish his goods from those of others. Thus, the use of the words "Kaiser," "King," "Monarch," "Royal," "Victor," "King Bee," "Pillsbury's Best" has been in those several instances judicially sanctioned as a lawful appropriation. J. & P. Baltz Brewing Co. v. Kaiserbrauerei, Beck & Co., 20 C. C. A. 402, 74 Fed. 222; Raymond v. Baking-Powder Co., 29 C. C. A. 245, 85 Fed. 231; Sarrazin v. Tobacco Co., 35 C. C. A. 496, 93 Fed. 624; Pillsbury v. Flour-Mills Co., 12 C. C. A. 432, 64 Fed. 841. It is true that in the case of Beadleston & Woerz v. Cooke Brewing Co., 20 C. C. A. 405, 74 Fed. 229, according to the syllabus, the word "Imperial" was, in the circumstances of that case, held to be so far a designation of quality as to be incapable of exclusive appropriation. It must be admitted that at first blush such ruling seems not in harmony with the other cases upon the subject. But the conclusion was based upon references showing the extensive public use of the word to denote great excellence, and it was thought the peculiar manner in which the word was associated with others in branding the complainant's goods indicated that in its context the word signified quality, rather than the manufacturer. One of the judges dissented from the view that the word was not capable of appropriation, though agreeing with the result in that case. But the same court, in the case of Raymond v. Baking-Powder Co., above cited, subsequently held that the word "Royal" had been lawfully appropriated as the trade-name for manufacturing and selling baking powder, and the court distinguishes its decision in the case of Beadleston & Woerz v. Cooke Brewing Co. upon grounds which harmonize that case with the current of decisions by emphasizing the fact that in that case the word "Imperial" was used in such association with other words as to negative the idea that it was not meant mainly to designate quality. In the case of Proctor & Gamble Co. v. Globe Refining Co., 34 C. C. A. 405, 92 Fed. 357,

we referred to the fact that other words and embellishments were employed upon the respective labels of the parties than the more distinctive ones for the purpose of showing that there was fair ground on which the court below might have found that there was enough of dissimilarity in the marks upon the packages to prevent purchasers from being deceived, and, thus bringing the case within the rule applicable to the review of orders granting or refusing preliminary injunction, that the action of the lower court will not be disturbed unless for clear error. Finding that upon all the facts there was sufficient ground on which the order refusing the injunction might stand under the operation of the rule referred to, we declined to reverse it. On the other hand, in Wilson v. T. H. Garrett & Co., 47 U. S. App. 250, 24 C. C. A. 173, 78 Fed. 472, this court found that the evidence of a fraudulent simulation of the trade-mark of the appellant was so clear and unmistakable that the action of the court below could not be supported, and the order refusing an injunction was reversed. Both cases recognized the fundamental principle by which the conduct of the parties is to be tested. The results were different because in the one case there was fair room for doubt, while in the other there was not.

It appears from the record in the case before us that the word "Queen" alone was used by the Clark-Hutchinson Company, the predecessors in this line of business of the appellant, and that the appellant, when it bought the other company out, added the word "Quality" to the designation in marking its goods, and has since continued to mark them "Queen Quality." But it also appears that their goods in common parlance were recognized under both designations, "Queen" and "Queen Quality," and were so known to the trade and by purchasers. We do not think, however, that this addition materially changed the designation. The added word did not obscure the origin. This is shown by the fact that the product continued to be known as "Queen" shoes, and was designated by that name by the trade and by the public. And the word "Queen" was still the dominating word in the trade-mark. There are many cases where it has been held that the addition of other words by an infringer did not destroy the identity of a trade-mark or name, and relieve him from the consequences of infringement, so long as his designation effected the practical purpose of denoting that the goods were those of another. By parity of reasoning, it must follow that, so long as the owner of a trade-name keeps up the substantial identity thereof, he is entitled to protection. It would serve no useful purpose to canvass the numerous authorities cited by counsel in their briefs. There is really no dispute in regard to the controlling principle, though there is some slight confusion upon subordinate propositions. We have limited our discussion to those which are pertinent to the case before us. We do not doubt that, if the court below had adopted the view that it was permissible for the appellant to adopt the word "Queen" as a trade-name for the shoes, the manufacture and sale of which was a distinct line of business in which it was engaged, an order would have been granted for an in-

junction substantially ·as prayed. The evidence leaves ·no doubt in· our minds that the appellee can have no other object in employing; this designation than to get the advantage of the reputation which the appellant's goods have acquired under that name, and that the continued use of it by the appellee would be simply to carry that object into effect.

The order of the circuit court must be so modified as further to restrain the appellee from using the word "Queen" in or upon any labels or marks affixed to ladies' shoes sold or offered for sale by it, and from in any other way representing the ladies' shoes sold or offered for sale by it to be "Queen" shoes, and from doing any other act or thing to induce the belief that the shoes sold or offered for sale by it are shoes manufactured or sold by the appellant.