AMERICAN LEAD PENCIL CO. v. L. GOTTLIEB & SONS.

(Circuit Court, S. D. New York. July 22, 1910.)

1. TRADE-MARKS AND TRADE-NAMES (§ 59*)—INFRINGEMENT.

The trade-mark "Knoxall," as applied to lead pencils, constituted an infringement on the phrase "Beats-All" previously used on pencils by complainant.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Dec. Dig. § 59.*]

2. TRADE-MARKS AND TRADE-NAMES (§ 65*)—SIMILARITY—INFRINGEMENT.

Whether trade-mark infringement exists does not depend solely on similarity to the eye or ear, but on whether there is such similarity as readily leads the mind of customers to confusion.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 64; Dec. Dig. § 65.*]

3. TRADE-MARKS AND TRADE-NAMES (§ 85*)—INFRINGEMENT—CONDUCT OF COMPLAINANT.

An objection to the maintenance of complainant's bill for infringement of complainant's trade-mark "Beats-All," as applied to lead pencils, that such mark was applied to a cheap inferior pencil and was a fraud on the public, was unsustainable when made by defendant who was pirating complainant's business by the use of an infringing trade-mark "Knoxall" on a similar pencil.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Dec. Dig. § 85.*]

4. TRADE-MARKS AND TRADE-NAMES (§ 93*)—INFRINGEMENT—BAD FAITH—EVIDENCE.

Necessity of proof of bad faith in a suit for infringement of a trade-mark does not obtain where defendant continued to use the mark after warning.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Dec. Dig. § 93.*]

5. EVIDENCE (§ 594*)—UNCONTROVERTED EVIDENCE—EFFECT.

Where, in a suit for infringement of a trade-mark connected with the sale of lead pencils in interstate commerce, the bill alleged that defendant was engaged in interstate commerce, and complainant made some proof thereof, to which defendant made no effort to reply or to indicate what part of his trade was interstate and what was not, he could not complain of the insufficiency of the proof that he was engaged in interstate commerce in the sale of such articles.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2431; Dec. Dig. § 594.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

6. TRADE-MARKS AND TRADE-NAMES (§ 45*)—DESCRIPTIVE PHRASES—SECONDARY MEANING—REGISTRATION.

Trade-Mark Act (Act Feb. 20, 1905, c. 592, 33 Stat. 725 [U. S. Comp. St. Supp. 1909, p. 1278]) § 5, provides that the act shall not prevent registration of any mark used by the applicant or his predecessor, or by those from whom title to the mark is derived, in the commerce with foreign nations or among the several states or the Indian tribes which has been in actual and exclusive use as a trade-mark by the applicant or his predecessor for 10 years next preceding the passage of the act. *Held* that, where complainant had used the trade-mark "Beats-All" attached to lead pencils since 1888, and in interstate commerce since before April 1, 1895, and on April 17, 1906, obtained registration of the mark in the Patent Office, such registration gave to the words which originally were only descriptive and not the subject of a valid trade-mark, a secondary meaning indicating goods exclusively manufactured by complainant, which made the words available as a proper trade-mark.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 53; Dec. Dig. § 45.*]

In Equity. Suit by the American Lead Pencil Company against L. Gottlieb & Sons. Decree for complainant.

This is a suit between citizens of the state of New York upon a registered trade-mark "Beats-All," which is applied to lead pencils of the complainant. The complainant states in the bill and affidavits that it has used the mark "Beats-All" since 1888, and in interstate commerce since before April 1, 1895, and that on the 17th day of April, 1906, it obtained the registration of the trade-mark in the Patent Office. The defendant has bought lead pencils from the National Pencil Company of Atlanta, Ga., bearing the name "Knoxall," which are similar in general appearance to those of the complainant. There is no dispute that the defendant sells these lead pencils in competition with the complainant. Defendant has answered the bill under oath (although oath was waived), and has failed to deny the allegations of the bill that it has sold the lead pencils bearing the trade-mark in interstate commerce. This allegation is contained in Article XV of the bill and the corresponding article of the answer, although denying much of the allegation in that article, avoids denying the allegation in question. The complainant also submitted two affidavits, one of Hamilton M. Kendrick and Frederick H. Croasdale, purporting to be of an interview with one, Myer Singer, of Chicago, who said that he had purchased from the defendant "Knoxall" pencils. These affidavits the defendant has not answered. The defendant raises 10 objections to the preliminary injunction as follows: (1) The federal trade-mark act of 1905 is unconstitutional, and jurisdiction cannot be sustained on any other ground. (2) In any event, only technical "trade-mark infringement" as distinguished from "unfair competition" can be urged, and there is no color for such claim here. (3) The two trade-marks are wholly different and distinct. (4) Complainant's trade-mark is not valid, being expressive of quality and character simply, and such meaning is not infringement. (5) Complainant's own trade-mark is deceptive and fraudulent, the use of "Beats-All" as applied to a cheap, inferior pencil, being a fraud upon the public. (6) Trade custom ac-

counts for all the resemblance in color or size. (7) Complainant has been guilty of laches. (8) Relief against defendant should be denied, in view of the fact that it merely bought "Knoxall" pencils outright in good faith. (9) In the absence of proof of any actual deception, and the failure to make out a clear case, the motion for a temporary injunction should be denied. (10) No substantial interstate commerce by defendant is involved, justifying an injunction.

Kenyon & Kenyon, for complainant.
Stroock & Stroock, for defendants.

HAND, District Judge (after stating the facts as above). I will take up the objections of the defendant in the order in which they are given.

1. So far as the unconstitutionality of the trade-mark act is concerned I shall not pass upon it. I should certainly not hold unconstitutional an act of Congress enacted after such care as this, and acted upon together with its similar predecessor for nearly 30 years, unless it appeared with certainty that it was unconstitutional. Prima facie I must assume it to be valid, and the mere challenge of it by the defendant in no sense raises any question of its validity. Until that question can be considered at much greater length the statute must enjoy the presumption of validity universally accorded to acts of Congress.

2 and 3. The second and third objections I shall consider together. I have no difficulty in finding that the phrase "Knoxall" is an infringement of the phrase "Beats-All." There is no such limitation as the defendant puts upon the infringement of a trade-mark; i. e., that the similarity must go only to the eye or ear. The question cannot be treated in any such technical manner, for always the substantial question is whether the defendant is likely to steal the complainant's trade by the use of the trade-mark in question. I am quite satisfied in this case that there is such similarity between the two phrases as would readily lead in the mind of customers to confusion; a case in point is the infringement of "Keepclean" by "Sta-Kleen." Florence Manufacturing Company v. J. C. Dowd & Co. (C. C. A.) 178 Fed. 73. There are many other decisions in the books which show that it is not alone similarity to the ear or eye which constitutes infringement. In the case of Moore & Co. v. Auwell, 178 Fed. 543, the Circuit Court of Appeals held that "Muresco" was not infringed by "Murafresco," Judge Lacombe dissenting upon that point. I interpret that decision as meaning that, as the defendant's name was substantially a description of the article, to wit, mural fresco, the scope of the trade-mark could not extend to prohibiting defendant's use of a descriptive term, else it would itself be bad as a trade-mark.

4. The next objection is that the trade-mark is expressive of quality and character. I agree with this objection. Proctor & Gamble Co. v. Globe Refining Co., 92 Fed. 357, 34 C. C. A. 405, Cooke & Cobb Company v. Andrew Miller et al., 169 N. Y. 475, 62 N. E. 582, and some obiter remarks in Coats v. Merrick Thread Co., 149 U. S. 562,

13 Sup. Ct. 966, 37 L. Ed. 847. I should deny the injunction upon that score except for considerations which I shall indicate later on.

5. The objection to the complainant's own conduct is frivolous. We have not yet got to the pass that the courts are closed to a man who says that a penny pencil "beats all." The defendant's unctuous regard for the good faith of the man whose business he is pirating in this case only suits some better world than this.

6. I do not rely in any sense upon the resemblance in color and size between the pencils. The question is one strictly of trade-mark and I agree that the bill could not be supported upon the theory of unfair trade.

7. I think that the laches are sufficiently explained in the case.

8. There is much talk in the books about the necessity of bad faith in trade-mark and unfair trade cases, but I think there is no case in which it has been held a bar to relief where the defendant has continued to use the trade-mark after warning.

9. It has been repeatedly decided that actual deception need never be proved provided there is reasonable likelihood of its occurrence. Of course the complainant must make out a clear case of infringement but I think he has done so.

10. Nor do I think that the defendant is in a position to state that there is substantially no interstate commerce involved under the decision in the Elgin Case, 179 U. S. 665, 21 Sup. Ct. 270, 45 L. Ed. 365. The bill alleges that the defendant is engaged in interstate commerce and makes some proof of it. The defendant, who has under its control all the facts, makes no effort to reply or to indicate what part is interstate trade and what is not. Until he does he cannot complain that little is proved.

The only question therefore which remains is the character of the complainant's mark. As I have already said, it certainly denotes excellence, and is prima facie invalid on that account, but it is also clear that it might easily, under well-known principles, obtain a secondary meaning. If by long association it has come in the minds of the public to indicate the complainant's manufacture, even though it originally was only a kind of puff to the wares, that is enough. There can be no need of going over the cases from Reddaway v. Banham, L. R. A. C. (1896), 199, which have made this doctrine now familiar, i. e., that although words are originally descriptive, the public frequently does get to associate them with the manufacture of a given man so that they obtain what is known as a secondary meaning: Were there proof in this case that the word "Beats-All" had obtained that secondary meaning, the complainant's case would be complete. I think that proof is prima facie supplied by the registration of the mark and that that was the intention of Congress. The mark itself purports to be given under the last proviso of section 5 of the statute (Act Feb. 20, 1905, c. 592, 33 Stat. 726 [U. S. Comp. St. Supp. 1909, p. 1278]) which is as follows:

"Nothing herein shall prevent registration of any mark used by the applicant or his predecessor, or by those from whom title to the mark is derived, in the commerce with foreign nations or among the several states or the Indian tribes which was in actual and exclusive use as a trade-mark,

of the applicant or his predecessor from whom he derived title, for ten years next preceding the passage of this act."

Registration is made only prima facie proof under the statute in any case, and it would have been consistent with its general import for Congress to establish what should be prima facie proof of secondary meaning. I think by this section it intended to provide a period of time during which if an applicant himself made exclusive use of even a descriptive phrase as a trade-mark, it should be assumed to have acquired a secondary meaning. Any other person could, of course, meet that presumption by proof that it had in fact never acquired any such secondary meaning, but until he does, the mark is good under the act. In the earlier proviso of the same section Congress had forbidden the registration of any descriptive or geographical names, or names indicating character or quality, and the subsequent proviso I have quoted could only have meant to exclude from the operation of that prohibition such descriptive phrases as had been exclusively appropriated for more than 10 years prior to the act. The most reasonable inference is that, in analogy with the law as then settled, that period of exclusive use was to create a presumption of secondary meaning. Indeed it was a fair presumption in fact to suppose that such marks would have acquired a secondary meaning, if the applicant had used them exclusively for so long. It is true that Congress might well have made such a period of 10 years always constitute prima facie proof of secondary meaning whenever the period began, instead of limiting it to a use prior to April 1, 1895, but it is no ground for misapprehending their purpose that they might have made it more general. English-speaking people lived for several centuries under a prescriptive statute that dated every adverse user from the reign of Richard I, and there was good precedent for Congress to limit the exclusive user of such marks from a fixed date that gets progressively remote.

The writ will, however, only go against the use of the mark in interstate or foreign trade. If the defendants wish to reply to the affidavits regarding sales in interstate trade they may do so on or before the 26th instant.